Eric H. Gibbs (Bar No. 178658)
David Stein (Bar No. 257465)
Amanda Karl (Bar No. 301088)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-9700
Fax: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
amk@classlawgroup.com

Katrina Carroll
Kyle A. Shamberg
Ismael T. Salam
**LITE DEPALMA GREENBERG LLC**
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Tel. (312) 750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com
isalam@litedepalma.com

*Attorneys for Plaintiffs*
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| *In re Behr Process Corp.* | SACV 17 17-01016 AG (KESx) consolidated with<br>SACV 17-01100 AG (KESx)<br>SACV 17-01228 AG (KESx)<br>SACV 17-01282 AG (KESx)<br>SACV 17-01374 AG (KESx)<br>SACV 17-01488 AG (KESx)<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |
|---|---|

# TABLE OF CONTENTS

NATURE OF CASE ...................................................................................................1

JURISDICTION AND VENUE ................................................................................2

PARTIES....................................................................................................................2

COMMON FACTUAL ALLEGATIONS .................................................................4

   I.   Deck and Patio Restoration ............................................................................4

   II.  Behr DeckOver ...............................................................................................5

   III. Defendants' Marketing Campaign ..................................................................6

   IV. As Defendants Know, DeckOver Is Not a Durable Alternative to Paints, Stains,
       and Other Resurfacers. ..................................................................................12

PLAINTIFFS' EXPERIENCES: .............................................................................22

CLASS ACTION ALLEGATIONS ........................................................................42

CHOICE OF LAW ALLEGATIONS .....................................................................46

TOLLING OF STATUTES OF LIMITATIONS ....................................................47

CAUSES OF ACTION ............................................................................................48

   Count I - Unlawful, Unfair, and Fraudulent Business Practices ..........................48

   Count II - Violation of California Consumers Legal Remedies Act........................50

   Count III - Unjust Enrichment................................................................................52

   Count IV - Violation of the Colorado Consumer Protection Act ("CCPA")............53

   Count V - Violation of the Florida Deceptive and Unfair Trade Practices Act........54

   Count VI - Violation of the Georgia Fair Business Practices Act ...........................55

   Count VII - Violation of the Illinois Consumer Fraud and Deceptive Trade

   Practices Act.........................................................................................................57

   Count VIII - Violation of the Uniform Deceptive Trade Practices Act....................58

   Count IX - Violation of the Maine Unfair Trade Practices Act ...............................60

   Count X - Violation of Massachusetts' Consumer Protection Act, ..........................62

   Count XI - Violation of Michigan Consumer Protection Act ...................................64

i

Count XII - Violation of Minnesota Consumer Fraud Act ........................................66

Count XIII - Violation of Missouri Merchandising Practices Act............................68

Count XIV - Violation of New Jersey Consumer Fraud Act ....................................69

Count XV - Violation of New Mexico Unfair Trade Practices Act..........................70

Count XVI - Violation of N.Y. Gen. Bus. Law § 349 .............................................73

Count XVII - Violation of Ohio Consumers Sales Practice Act..............................74

Count XVIII - Violation of Oregon Unlawful Trade Practices Law ........................79

Count XIX - Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law........................................................................................................81

Count XX - Breach of Implied Warranty.................................................................83

Count XXI - Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty, Cal. Civ. Code § 1790, et seq. ...................................................85

Count XXII - Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. .....................................................................................................................86

Plaintiffs Aaron Amborn, Stacey Clow, Aaron Corneail, Joel Darby, James Droge, Deborah Durda, William Elger, Anne Gober, Bruce Hultmark, Janice Huskey, Paula Kastanis, Erik Lagesen, Brian Lange, Laurie McCall, Glen Meyers, Thomas Noftzger, Darin Richey, Philip Ross, Diane Stricklin, Ronald Stricklin, Bruce Tobey, Charles Weygant, Zenas Whitehead, Heather Wood, David Wormwood, and Bryon Zablotny, individually and on behalf of all others similarly situated, by and through undersigned counsel, allege as follows:

## NATURE OF CASE

1.    Millions of Americans have homes with outdoor wooden decks and concrete surfaces.  The surfaces require periodic maintenance not only to maximize their useful life, but also to keep up their appearance.  Traditionally, homeowners apply paints or stains on their decks and patios to provide a decorative and protective barrier from the elements and to minimize wear and tear.

2.    In 2013, Behr, through a national marketing campaign, released a new patio and deck product exclusively through Home Depot, branded as DeckOver.  Behr and Home Depot represented to homeowners that DeckOver was worth its premium price (3-5 times more expensive than ordinary paints and stains) because it was a more durable coating (5 times thicker) and it could repair decks by filling in cracks and stopping splinters.

3.    But DeckOver is not durable or long-lasting.  Instead, within mere months of application, DeckOver begins to flake, peel, strip, and separate from deck and concrete surfaces.  Thus, rather than providing homeowners with a premium option for reducing maintenance work and improving the look and performance of their patios and decks, DeckOver performs worse than cheaper options and requires hours of scraping, scrubbing, and sanding to remove it (with some homeowners resorting to replacing their decks entirely).

4.    Plaintiffs bring this class action suit on their own behalves and on behalf of others similarly situated under California, Colorado, Florida, Georgia, Illinois,

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

Maine, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New Mexico, New York, Ohio, Oregon, and Pennsylvania consumer protection laws.  Plaintiffs seek an order forcing Behr and Home Depot to stop their deceptive conduct and to provide appropriate remuneration to affected consumers.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and (d), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and more than two-thirds of the members of the proposed class are citizens of states different from that of Behr Process Corporation and Behr Paint Corporation.

6.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district.  Defendants Behr Process Corporation and Behr Paint Corporation are California corporations with their principal places of business in this District.

## PARTIES

7.     Plaintiff Aaron Amborn is a resident and citizen of the State of Minnesota.

8.     Plaintiff Stacey Clow is a resident and citizen of the State of Colorado.

9.     Plaintiff Aaron Corneail is a resident and citizen of the State of Michigan.

10.     Plaintiff Joel Darby is a resident and citizen of the State of New Mexico.

11.     Plaintiff James Droge is a resident and citizen of the State of New York.

12.     Plaintiff Deborah Durda is a resident and citizen of the State of Ohio.

13.     Plaintiff William Elger is a resident and citizen of the State of Michigan.

14.     Plaintiff Anne Gober is a resident and citizen of the State of Pennsylvania.

15.     Plaintiff Bruce Hultmark is a resident and citizen of the State of Florida.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

16.     Plaintiff Janice Huskey is a resident and citizen of the State of Oregon.

17.     Plaintiff Paula Kastanis is a resident and citizen of the State of New York.

18.     Plaintiff Erik Lagesen is a resident and citizen of the State of Georgia.

19.     Plaintiff Brian Lange is a resident and citizen of the State of Missouri.

20.     Plaintiff Laurie McCall is a resident and citizen of the State of California.

21.     Plaintiff Glen Meyers is a resident and citizen of the State of Ohio.

22.     Plaintiff Thomas Noftzger is a resident and citizen of the State of Missouri.

23.     Plaintiff Darin Richey is a resident and citizen of the State of New York.

24.     Plaintiff Philip Ross is a resident and citizen of the State of Oregon.

25.     Plaintiff Diane Stricklin is a resident and citizen of the State of Illinois. Mrs. Stricklin is the wife of Plaintiff Ronald Stricklin.

26.     Plaintiff Ronald Stricklin is a resident and citizen of the State of Illinois. Mr. Stricklin is the husband of Plaintiff Diane Stricklin.

27.     Plaintiff Bruce Tobey is a resident and citizen of the State of New Jersey.

28.     Plaintiff Charles Weygant is a resident and citizen of the State of Minnesota.

29.     Plaintiff Zenas Whitehead is a resident and citizen of the State of Massachusetts.

30.     Plaintiff Heather Wood is a resident and citizen of the State of Colorado.

31.     Plaintiff David Wormwood is a resident and citizen of the State of Maine.

32.     Plaintiff Bryon Zablotny is a resident and citizen of the State of New York.

33.     Defendants Behr Process Corporation and Behr Paint Corporation are California corporations, with their principal place of business in California.  Both

3

Behr Process Corporation and Behr Paint Corporation are located at 3400 W. Segerstrom Ave., Santa Ana, California, 92704.

34.     Defendant Masco Corporation is a Delaware corporation, with its principal place of business in Michigan.  Masco is located at 20001 Van Born Road, Taylor, Michigan, 48180.  Masco acquired Behr Process Corporation in 1999.  Masco conducts Behr-oriented marketing and sales operations in Santa Ana, California. Plaintiffs refer to Behr Process Corporation, Behr Paint Corporation, and Masco Corporation collectively as "Behr."

35.     Defendant The Home Depot, Inc. is a Delaware corporation, with its principal place of business in Georgia.  The Home Depot, Inc. is the parent company of Home Depot U.S.A., Inc. and describes itself in annual reports filed with the Securities Exchange Commission as the world's largest home improvement retailer. In 2016, its general gross profit was $3.42 billion, and its net sales amounted to $94.6 billion.

36.     Defendant Home Depot U.S.A., Inc. is a Delaware corporation, with its principal place of business in Georgia.  Home Depot U.S.A. operates as a subsidiary of The Home Depot, Inc.  There are approximately 2,000 retail stores under the brand name "The Home Depot" in the United States.

## COMMON FACTUAL ALLEGATIONS

### I. Deck and Patio Restoration

37.     Wooden decks and concrete surfaces are prone to wear and deterioration through exposure to the elements, which leads to scuffing, decay, cracking, and splinters.  Periodic maintenance is needed to maximize the surfaces' useful life and to keep up their appearance.

38.     One way to maintain the surfaces is through application of coatings. Coatings include paints and stains that provide a thin decorative and protective barrier (with the stains actually soaking into the fibers themselves).  Although paints and stains provide some surface protection, they typically do not improve the surfaces'

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

condition (for example, by fixing cracks or splinters).  Paints also need to be reapplied relatively often to maintain their cosmetic and protective benefits.

39.     An alternative coating, which is the focus of this case, is a relatively recent introduction to the marketplace: a protective, restorative coating, known as a resurfacer.  Like paints and stains, resurfacers are also painted onto surfaces and are typically marketed as providing substantially more benefits (albeit at a greater cost) than paints and stains.  Resurfacers are supposed to provide an attractive appearance akin to what a paint or stain would provide, but better preserve the surface by coating it in a significantly thicker protective barrier.  The thicker coating provides the added benefit of filling in large cracks and encapsulating splinters.  Resurfacers are designed and expected to last significantly longer than paints and stains, eliminating the need for regular maintenance while at the same time substantially extending the life of wood and concrete surfaces.

40.     Because of their expected added benefits, resurfacers typically cost substantially more than paints and stains.  A consumer who spends the extra money to buy a resurfacer may be able to avoid replacing a deck or will have to devote less time and money to maintaining the deck in the years that follow.

**II. Behr DeckOver**

41.     Behr manufactures a line of deck resurfacers called "Behr's Premium DeckOver."  DeckOver is 100% acrylic resin product fused with ceramic microspheres.

42.     In or about September 2012, Behr launched a limited release of DeckOver, during which it was sold in approximately 120 Home Depot stores.  Behr's nationwide launch of DeckOver occurred in the spring of 2013.  Behr claimed in a press release that DeckOver is an "advanced formula" that "revitalize[s] tired decks, patios, porches and even pool decks, and provides a budget-friendly unique solution that was previously unavailable to consumers."  According to Scott Richards, Senior

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

Vice President of Marketing at Behr Process Corporation, this product line was the culmination of "years of research and the latest technology."

43.     Richards described "easy application and durable protection against the elements, . . . allowing consumers to rejuvenate instead of replacing their decks or concrete surfaces."  About a year later, Behr introduced a Textured DeckOver product.

44.     DeckOver is sold exclusively at Home Depot, both online and at retail locations.  As part of their relationship, Behr promised Home Depot it would spend a certain amount of money advertising and promoting DeckOver.  Home Depot profits from selling Behr goods in its stores and online.

**III.    Defendants' Marketing Campaign**

45.     Since DeckOver was introduced, both Behr and Home Depot have marketed it to "do-it-yourself" homeowners as a durable and long-lasting alternative to paint and stains, capable of extending the life of surfaces.  Home Depot describes do-it-yourself homeowners as those who "purchase products and complete their own projects and installations" with Home Depot's assistance and product resources.

46.     For example, Behr's website claims DeckOver creates a "[l]ong-lasting, durable finish" that "conceals cracks and splinters up to ¼"" and creates a "smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion." It also describes DeckOver as "5x thicker than standard paints and stains."

47.     Similar representations appear on the product's packaging:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



The label states that DeckOver "Brings new life to old wood & concrete"; "Covers up to 75 Sq. Ft. in 2 Coats"; "Creates a Smooth, Slip-Resistant Finish"; and "Conceals Splinters & Cracks up to ¼"."

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22   The label also represents:

23   • "Resists Cracking & Peeling";

24   • "Durable, Mildew Resistant Finish";

25   • "Waterproofing, Solid Color Coating";

26   • "Revives Wood & Composite Decks, Railings, Porches & Boat Docks";

27   • "Great for Concrete Pool Decks, Patios & Sidewalks"; and

28   • "Interior/Exterior, 100% Acrylic Formula."

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

48.     Behr also airs television commercials advertising DeckOver.  The DeckOver television commercials emphasize the same themes as can be found on DeckOver labeling and in-store displays: the ads feature people standing and dancing barefoot on decks, with a voiceover saying not to "let cracks and splinters spoil your fun" and promising DeckOver is "made-to-last," "extends the life of your deck," and is the "ultimate do-over for wood and concrete."

49.     Behr hosts a blog entitled "Colorfully Behr" at www.behr.com/colorfullybehr.  A blog entry dated May 31, 2013, markets DeckOver: "excellent news if you have a wood deck that looks old and weathered, or a pool deck that's cracked and ugly, because you don't have to replace it anymore."  In the comments portion on this DeckOver entry, Behr describes the "life expectancy" of DeckOver as "similar to a high quality solid color wood stain (typically 5-10 years on horizontal surfaces, 15-25 years on vertical surfaces)."  Behr representatives on Home Depot's website have written that DeckOver should "last as long as a high quality Solid Color Wood Stain," which is "5-10 years on horizontal surfaces and 15-25 years on vertical surfaces," and have acknowledged that "cracking after one year is definitely not normal."

50.     Home Depot markets DeckOver in a virtually identical manner as Behr. On its website, Home Depot emphasizes the durability and restorative effects of DeckOver, claiming it "will bring your old, weathered wood or concrete back to life," that it will "create[] a durable coating on your tired deck, rejuvenating its look," and that it will "[b]ring new life to old, uninviting wood" and make your surfaces "like new," with a "refreshed look."  Home Depot, like Behr, emphasizes that DeckOver "[r]esists cracking and peeling," "conceals splinters and cracks up to ¼ in," and is "waterproof[]," providing a "mildew resistant finish."  In-store displays at Home Depot tout DeckOver's "long-lasting durability."

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES



CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

1   51.   Behr and Home Depot also used print advertising.  In one advertisement,

2  the copy read: "REPLACE?  RESURFACE.  New BEHR DECKOVER Gives New

3  Life to Old Decks.  Why replace old wood if you don't have to?  Resurface and extend

4  the life of your deck—with new BEHR DECKOVER.  More than a stain, it adds a

5  beautiful new surface, fills cracks, and covers splinters.  You don't need a new deck,

6  you need BEHR DECKOVER."



11

52.     Behr and Home Depot use these representations to charge more for DeckOver.  Behr's overall marketing scheme focuses on DeckOver's superior durability compared to paints and stains and that it is an alternative to deck replacement (which is several times more expensive).  Compared to Behr and other companies' paints and stains, DeckOver covers 3-5 times less area and yet is more expensive per gallon:

| Type | Behr Product | Coverage per gallon | Cost per gallon |
|------|--------------|---------------------|-----------------|
| Resurfacer | DeckOver | "75 sq. ft. in two coats" | $35 |
| Stain | DeckPlus Waterproofing Wood Stain | 250-300 sq. ft. first coat<br>500-600 sq. ft. second coat | $27 |
| Paint | Porch & Patio Floor Paint | 400 sq. ft. | $28 |

## IV.   As Defendants Know, DeckOver Is Not a Durable Alternative to Paints, Stains, and Other Resurfacers.

53.     DeckOver is not capable of reliably coating wood and concrete surfaces for more than a short period of time.  It routinely peels, bubbles, strips, and degrades within months of application.

54.     Behr's website has received over 150 consumer complaints since summer 2013 concerning DeckOver's short-lived utility, the damage it causes to the surfaces to which it is applied, and the time and money spent to either rehabilitate or replace decks to which DeckOver was applied.  Several examples of these complaints are excerpted below:

12

- "I was extremely happy to hear the supposed benefits and ease of use of this new product. ... The problem is that upon putting our furniture back on the deck, any slight movement scratches the finish back down to the bare wood. We hosted a party this weekend for 30 people and I now have 10 or so areas to touch up. With the cost and time spent dealing with this product, I expect years of normal wear and tear, not one week. We are disappointed and would recommend going a different route."—June 29, 2013

- "When it dried the deck looked like plastic rather than wood. And then when we placed the outdoor furniture back on the deck we found that the slightest movement of the chairs mars the deck finish. When the dog runs across the deck her wet/muddy paws mark the deck.  The Deck Over finish is too delicate for a deck. We are very disappointed with the product, with Behr and with Home Depot."—August 8, 2013

- "Don't waste your money on this product if you have an older deck with cracks.  The coverage is not want [*sic*] the product advertised and the paint chips and scratches very easily.  The product is way over priced.  You would come out a lot better just to replace the decking boards."—September 9, 2013

- "Worst product ever!  Waste of money! . . . I bought the Behr Deckover product in order to redo my deck.  I did all the prep work the instructions stated to do . . . I did all of this in the summer of 2013.  It is now February 2014.  The product did not even last one year.the product is already peeling up off of the wood . . . I would have been better to re stain the deck rather than use this product.  I will have to now re-sand all of this off and apply a coat of deck stain to protect the wood."—February 27, 2014

13

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- "Peeling off after 8 months . . . I painted my deck in summer 2013, followed all instructions from the can.  Just after 8 months my deck started to peel off.  Now I have to spend money getting all my deck sanded to be able to get all this deck over removed."—March 10, 2014



(Image from above review dated March 10, 2014)

- "Peeled Badly . . . When I applied the Deck Over product, last summer, it looked beautiful.  But now that winter has ended it's peeling and looks horrible.  I've only had it down for 9 months and now I'm going to have to completely redo my deck.  What an absolute mess!"—April 18, 2015

- "Peeling . . . Did not last one year and very difficult to work with.  You need to offer total refunds at the very least.  There is no way to return the time spent working with this garbage and no way to put a price on the stress caused when the peeling began after the snow melted."—May 10, 2015

14

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

1
2
3
4
5
6
7
8
9

- "I was so excited to try Deckover on my deck.  The pictures made it look like an amazing product.  I prepped and sanded the deck using Behr products as I wanted to make sure I applied everything correctly.  After the snow melted this year over 50% of my deckover peeled right off.  I am sad to say that splurging for the more expensive 'better' product certainly did not pay off for me.  Product states it will last on a deck for up to 10 years yet it hasn't even lasted a full year on my deck.  I am very disappointed in Behr and their deckover product"—May 12, 2015

10
11
12
13
14
15
16
17

- "In less than a year of putting this Deck over on our deck, I started to see some bubbling starting along the trim boards of the deck.  Not much longer and the whole deck showed signs of the bubbling and then complete peeling . . . This was intended as a hot tub deck but now it sits empty as we cannot afford to buy any other stain/paint.  Plus take the time to peel all the defective Behr Deck over paint and put another cleaner on the deck."—October 27, 2016

18
19
20
21
22
23
24

- "Followed all the instructions . . . Started peeling after about 60 days to a point where large chunks were blowing off.  Now comes the hard part of using sandpaper, sanding discs, chemicals, power washer, scrapers and anything else I can think of to remove what's left.  Behr owes me 48 hours of my life back.  Thank goodness I didn't do the railings and spindles!!!!!"—April 3, 2017

25
26
27
28

- "This is the worst product I have ever purchased.  Advertised to bring back old wood to life, it ruined what old wood I had and caused me to replace my entire deck!  Would NEVER recommend this product to anyone."—May 9, 2017.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

1

2      55.    The negative reviews on Behr's website are not prominently featured,

3   particularly when compared to positive reviews.  For example, when visiting the page

4   for Behr Premium DeckOver, Behr prominently lists the "Latest Featured Reviews"

5   toward the top of the page in large font.  Each of those reviews is positive in nature

6   and is highlighted in large gold print.  To locate the many negative reviews, on the

7   other hand, it is necessary to either click to a separate webpage entirely, or to scroll

8   toward the bottom of the page to an area that is not visible on most computer monitors

9   and devices without scrolling down the webpage.  Once near the bottom of the page, it

10  is possible to toggle from a "Product Usage" tab, which appears by default, to the

11  "Ratings & Reviews" tab.  Only after that toggle is it possible to see the negative

12  reviews.  An "Avg. Rating" appears toward the top of the page, but it is in smaller

13  print than the featured reviews and is in black text, rather than the gold text of the

14  featured reviews.  Also of note, while Behr's website allows reviews of 1-, 2-, 3-, 4-,

15  and 5-stars, the posted reviews do not show anything approaching a bell curve

16  distribution.  Instead, there are fewer 2-, 3-, and 4-star reviews combined than there

17  are either 1- or 5-star reviews.  One explanation for this would be that Behr or a

18  surrogate has "stuffed the ballot box," by placing positive reviews to balance out the

19  hundreds of negative reviews.  This is a fairly common practice for websites that post

20  customer reviews.

21      56.    Home Depot has also received hundreds of DeckOver complaints

22  through its website:

23      •   "Doing my deck over . . . Don't buy this product.  I hope it holds up during

24          the winter.  Otherwise I'll be doing my deck over in the spring.  It definitely

25          will not be Behr's DeckOver or anything by Behr for that matter."—August

26          3, 2013

27

28

---

16

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

- "Peeling after 6 mos . . . I followed all of the directions & replaced all rotted deck boards.  Deck over is peeling & bubbling all over my deck!  A disaster"—May 14, 2014

- "Did not last a year . . . Labor intensive to install. did not hold up over northern Illinois winter.  i would pass."—May 24, 2014

- "the worst stuff on the market, didn't last 3months and when I want my money back this paint is GARBAGE."—July 3, 2014

- "We used this product on an older deck, after buying our home.  Spent tons of money and time on this project with Deck Over last fall, in September.  It's only May, and the whole area is peeling off. Needs totally redone again, and it hasn't even been a year."—May 14, 2014

- "Worst product I have ever bought.  We used over 6 gallons for our large deck.  The sales person told us it would last 10 years.  We followed the instructions exactly and within SIX months it was peeling!  Not to mention it does not fill in cracks like promised."—June 3, 2015

- "We feel the product was misrepresented by Home Depot and Behr and therefore did not meet our expectations.  It did not do a good job of covering the concrete surface of our lanai."—March 5, 2017

- "I should've read the reviews before using this product.  We actually paid a professional to apply it to our deck.  They followed all of the instructions and it looked great for about a month and then we had a few late spring snow storms not it is peeling right off the wood.  It is starting to look terrible.  What a waste of money!"—May 17, 2017

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

- "This paint is terrible!!!  Did every step Bahr [sic] called for last summer 2016 to prep deck and paint with deck over.  It is now April or 2017 and my deck is peeling badly.  You can take the paint and peel it up like tape.  Absolutely horrible.  Spent 500.000 (sic) dollars and one week to paint deck and railings."—April 9, 2017
- "Within 7 months this product will peal (sic) up.  I have no idea why this product is still on the market.  You will be scraping it off in a year.  Don't waste your time or money on it."—June 6, 2016

- "Mine is bubbling up after ONE month.  Applied exactly as specified.  Horrible product."—October 1, 2016

- "HORRIBLE PRODUCT.  I would never recommend this!!!!! . . . We spent so much money and time using a product that turned out to be an utter disaster.  Home depot should have tested this product thoroughly . . . very laborious, not long lasting, deck looks worse since using product, does not hold up to normal weather conditions, high price for sub-par product."— May 1, 2014

- "This product is just awful, less than a year after application and my deck is peeling and the flakes of paint are literally covering my lawn and being tracked into the house.  We followed all the manufacturer instructions on preparing the wood for this product but all that money and time we spent using this product was a waste.  The worst part is now I have to try to fix it.  Please, please save yourself and do not try this product!"—May 17, 2016

18

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

- "We purchased 3 cans and all the supplies needed.  Followed the instructions to a tea.  Looked great for a very short few months and peeled and chipped and now looks worse than it did before all my time, work, and money!!  So. Mad!!"—May 15, 2015

- "after 6 months this is peeling . . . We are seniors that live on SS and bought this product for our deck.  It was very expensive, but it was highly recommended and we used it as the directions recommended.  We had a lot of snow and cold weather this year, but we thought this was the purpose of this product.  We would never recommend this product."—March 20, 2015.

57.    Like on the Behr website, the negative customer reviews of DeckOver on the Home Depot website are not prominent.  On the Behr Premium Deckover page, for example, the reviews do not appear until the lower half of the page, which requires scrolling down well past what would be visible on the typical computer monitor or device.  In addition, the reviews on Home Depot's website, like on Behr's, do not follow a bell curve distribution and instead are mostly 1- and 5-star reviews.

58.    It is common for manufacturers and sellers of consumer products to monitor media reports, internet forums, and other public reactions and treatment of their product.  In May 2016, CBC News published an article entitled: "Behr Deckover subject of customer complaints over peeling paint; Company removed Facebook page with numerous complaints after CBC inquiry."  The article describes, among others, homeowner Paul Rhyno, who first used DeckOver in 2014.  But "[w]ithin about three months after [Mr. Rhyno] put it on, it started peeling off in big swaths and bubbling."  He tried again the following year but got the same results.  The article contains photographs of Mr. Rhyno's damaged deck:

19

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





59.    Negative consumer reactions to Behr's DeckOver can also be found elsewhere across the internet.  For example, about 100 customers have written complaints about DeckOver on pissedcustomer.com, including the following.

- "I applied deckover last fall and now it is all peeling off and my deck looks worse than when I first did it. I am very disappointed in this product. I spent well over a hundred dollars on this product . . . I thought it was guaranteed to last up to 10 years."—May 15, 2015

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

- "I spent a great deal of money painting two decks with this garbage.  One year later it is peeling off everywhere . . . I now am having to replace several rotted boards, pay for pressure washing again and when cured, repainted.  It will obviously cost me more to fix the problem than when I initially paid to have the deck painted, as I am sure a lot of scraping will also have to be done."—October 19, 2016

- "I had this product put on my deck last fall and it began to peel by spring.  Now I have multiple places that the deck over has completely peeled off . . . It's a shame you pay hat [sic] much for a product that does not last one year."—December 30, 2016.

60.    Behr also researched and tested DeckOver before beginning to sell it. Given how quickly it becomes apparent that DeckOver is not capable of performing as a durable alternative coating on wood and concrete surfaces, Behr certainly discovered that DeckOver begins to peel, chip, bubble, and crack within months of application before introducing DeckOver to the market.

61.    After it went on the market, complaints were widespread and persistent: Defendants have received phone calls and emails complaining about DeckOver, and consumers have been uploading negative reviews of DeckOver on Behr's own website, Home Depot's own website, and elsewhere since summer 2013.  Behr reviews the complaints on these websites and has responded to some of them.  The complaints on these websites are not prominent.  For example, Behr highlights on its DeckOver product page the "Latest Featured Reviews" which consists of four and five star reviews, but only through scrolling well down the page or clicking to a separate webpage is it revealed that there are hundreds of negative reviews.  Likewise, the reviews on Defendants' websites do not follow a bell curve distribution and instead are mostly 1- and 5-star reviews.  In addition, there is at least one report by the media

1    that Behr removed online complaints on its own Facebook page containing DeckOver

2    complaints.

3         62.    Fixing the damage to one's deck that results from applying DeckOver is

4    difficult and costly.  As the reviews above describe, DeckOver cracks, peels, bubbles,

5    and chips, exposing the underlying surface to the elements.  All these forms of

6    exposure both fail to protect wood from precipitation and trap moisture onto wooden

7    boards underneath the DeckOver that remains, causing mildew and rot.  Patchwork

8    repair does not solve these problems as other areas of DeckOver will inevitably

9    loosen.  Full removal of DeckOver requires stripping the surface and reapplying a

10   protective coating, which takes many hours.  Given how costly it is to remove

11   DeckOver, re-prepare the surface, and re-coat it, some deck owners resort to replacing

12   their decks entirely.

13        63.    Yet Defendants continue to sell DeckOver, continue to profit from those

14   sales, continue to market it as "durable," "long-lasting," and an alternative to

15   replacing one's deck, and do not warn customers beforehand that the product fails

16   within only a few months of application, often leaving the surface looking worse than

17   before DeckOver was applied.

18        64.    As a result, consumers continue to spend hundreds of dollars purchasing

19   and applying DeckOver, and spend time and money removing and replacing

20   DeckOver when it peels, bubbles, chips, cracks, discolors, and damages their decks.

21

22   **PLAINTIFFS' EXPERIENCES:**

23   **Aaron Amborn**

24        65.    Plaintiff Aaron Amborn purchased one 5-gallon container and two 1-

25   gallon containers of Behr DeckOver in or around June 2016 from a Home Depot store

26   in Forest Lake, Minnesota.  Mr. Amborn had seen online promotional advertisements

27   for DeckOver and viewed the product label before buying DeckOver.

28

66.     Mr. Amborn applied the DeckOver to several wood surfaces around his home, including a deck and railings, in July 2016.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Over the winter, the DeckOver began to bubble and peel off the wood surfaces.  Soon after, the DeckOver was peeling off in large strips and blowing away in the wind.

67.     In approximately June 2017, Mr. Amborn went back to Home Depot and complained that DeckOver had peeled off his deck and railings within six months of application.  The Home Depot employee had heard of this problem, and told Mr. Amborn that Behr was reformulating DeckOver to fix it.

68.     Had Mr. Amborn known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

69.     Mr. Amborn continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Stacey Clow**

70.     In or near June 2015, Plaintiff Stacey Clow purchased approximately six gallons of DeckOver product from a Home Depot's store in Fort Collins, Colorado.  Ms. Clow had seen advertisements for DeckOver and viewed the product label.

71.     Ms. Clow applied the DeckOver to her deck.  She carefully reviewed the application instructions on the label prior to applying DeckOver to her deck, and applied the product as instructed.  Shortly after application, the DeckOver product began to crack and peel in numerous areas of her deck.  Plaintiff Clow discovered

23

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

that, when subjected to rain or water, the DeckOver product would peel away in large pieces.

72.   Had Ms. Clow known that DeckOver was incapable of providing durable surface coating, she would not have purchased or used the product.

73.   Ms. Clow intends to continue to maintain her home's outside wooden surfaces in the years to come, including by purchasing resurfacers or other coatings. Ms. Clow is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, she and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Aaron Corneail**

74.   Plaintiff Corneail purchased one 5-gallon container of Behr DeckOver in or around May 2016 from a Home Depot store in Michigan.  Mr. Corneail had seen advertisements for DeckOver in the Home Depot store.  Mr. Corneail also reviewed the product label before buying DeckOver.

75.   Mr. Corneail applied the DeckOver to his wood deck on his home in May 2016.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, the DeckOver began to bubble, crack, and peel off the wood surfaces.

76.   Had Mr. Corneail known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

77.   Mr. Corneail continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

**Joel Darby**

78.    Plaintiff Joel Darby purchased approximately one 5-gallon container and a 1-gallon container of Behr DeckOver on in September 2016, from a Home Depot store in Alamogordo, New Mexico.  Mr. Darby had seen television advertisements for DeckOver.  Mr. Darby also reviewed the product label before buying DeckOver.

79.    Plaintiff Darby applied the DeckOver to one wood deck on his home, in approximately October 2016.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.

80.    Within a few months, the DeckOver began to bubble, crack, and peel off the wood surface.  Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

81.    In December 2016, Mr. Darby e-mailed Behr and told them that the DeckOver had cracked, bubbled, and peeled off his deck within a few months of application.  Behr never responded to Plaintiff Darby's e-mail.

82.    Had Mr. Darby known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product. Mr. Darby continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that, without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a few months of application.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

**James Droge**

83.     Plaintiff James Droge purchased several gallons of DeckOver in or around May 2016 from a Home Depot store in Coram, New York.  Mr. Droge had seen promotional material and viewed the product label before buying DeckOver.

84.     Mr. Droge applied the DeckOver to his deck.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Shortly after application, the DeckOver product began to crack and peel off the wood surfaces.

85.     Had Mr. Droge known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

86.     Mr. Droge intends to continue to maintain his home's outside surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Deborah Durda**

87.     Plaintiff Deborah Durda purchased two 5-gallon containers and approximately two or three 1-gallon containers of Behr DeckOver in or around June 2014, from a Home Depot store in Avon, Ohio.  Ms. Durda had seen television advertisements for DeckOver.  Ms. Durda also reviewed the product label before buying DeckOver.

88.     Plaintiff Durda applied the DeckOver to one wood deck on her home, in or around June 2014.  She carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.

89.     Within a few months, the DeckOver began to bubble, crack, peel and pull off the wood surface.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

90.    In or around September 2014, Ms. Durda contacted Behr and told them that the DeckOver had cracked, bubbled, peeled and pulled off her deck within a few months of application.  Behr's only response was to send her free DeckOver.

91.    In or around June 2015, Plaintiff Durda re-applied the DeckOver to the wood deck on her home, and followed the application instructions provided by Behr.

92.    Within a short time, the DeckOver again began to bubble, crack, peel and pull off the wood surface.  Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

93.    In or around March 2017, Ms. Durda contacted Behr and told them that DeckOver had cracked, bubbled, peeled and pulled off her deck in large strips.  Behr's only response was to tell her that she could remove the product from her deck.

94.    Ms. Durda attempted to remove the product as per the instruction of a Behr representative, Kevin Sullivan.  However, Ms. Durda has been unable to remove the product in an effective manner even after following Mr. Sullivan's instructions.

95.    Had Ms. Durda known that DeckOver was incapable of providing durable surface coating, she would not have purchased or used the product.

96.    Ms. Durda continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  She is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that she and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a few months of application.

**William Elger**

97.    Plaintiff William Elger purchased 2-3 gallons of DeckOver from a Home Depot store in Michigan in or about autumn of 2015.   Mr. Elger had seen advertisements and commercials both on television and at the Home Depot and viewed the product label before buying DeckOver.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

98.     Mr. Elger applied the DeckOver to his deck.  He carefully reviewed the application instructions on the label prior to applying DeckOver, ad applied the product as instructed.  By summer 2016, the DeckOver began to bubble, crack, peel, and lift from his deck.

99.     In or about July 2016, Mr. Elger called Behr's customer service number to complain about the product failure. Defendants simply sent Plaintiff more flawed DeckOver and additional BEHR-brand deck cleaner.

100.    Had Mr. Elger known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

101.    Mr. Elger continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Anne Gober**

102.    Plaintiff Anne Gober purchased one 5-gallon container of Behr DeckOver in August 2014, from a Home Depot store in Wilkes-Barre, Pennsylvania. Ms. Gober had seen television advertisements for DeckOver.  Ms. Gober also reviewed the product label before buying DeckOver.

103.    Plaintiff Gober and her husband applied the DeckOver to the wood deck on their home, in August 2014.  They carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few days, the DeckOver began to leave stains on her deck.

104.    In August 2014, Ms. Gober called Behr and told them that DeckOver had left stains on her deck within a few days of application.  Behr offered to send her a free 5-gallon container of DeckOver.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

105.    In the Fall of 2014, Ms. Gober and her husband re-applied the DeckOver. Within a few months of application, Ms. Gober noticed that her deck began to bubble, crack, and peel off the wood surface.  Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

106.    In or around June 2017, Ms. Gober replaced some of her decking boards that were severely cracked as a result of applying the DeckOver because the boards presented a safety hazard.

107.    Had Ms. Gober known that DeckOver was incapable of providing durable surface coating, she would not have purchased or used the product. Ms. Gober continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  She is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that she and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Bruce Hultmark**

108.    Plaintiff Bruce Hultmark is a resident of the state of Florida, county of Sumter. In the summer of 2014, Plaintiff purchased one five gallon bucket of DeckOver from a Home Depot located in Amsterdam, New York in order to paint the deck of a summer home in New York State.

109.    Mr. Hultmark applied the DeckOver to his wood deck at his summer home in the summer of 2014.  Prior to application, he carefully reviewed the application instructions on the label, and applied the product as instructed.  Shortly after, the DeckOver began to bubble, crack, and peel off the wood surfaces.

110.    After noticing the significant peeling and cracking of the DeckOver applied to his deck, in June 2015, Mr. Hultmark purchased an additional one gallon container of DeckOver for the purpose of reapplying to the cracking and peeling

portions of Mr. Hultmark's deck.  Mr. Hultmark again reviewed and followed the application instructions on the label and applied the product as instructed.  Despite following the directions on the product label, Mr. Hultmark has observed continued cracking and peeling in numerous areas of his wood deck.  Mr. Hultmark estimates that the DeckOver product is peeling off in approximately 50% of his deck and is suffering from substantial bubbling in those areas that are not already peeling.

111.   In the summer of 2017, Mr. Hultmark complained to Home Depot regarding the widespread cracking and peeling on his deck.  In response, Home Depot offered only one gallon of DeckOver product to remediate the substantial damage to Mr. Hultmark's deck.

112.   Had Mr. Hultmark known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

113.   Mr. Hultmark continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Janice Huskey**

114.   Plaintiff Janice Huskey purchased several containers of Behr DeckOver in or around April 2015 from a Home Depot store in Warrenton, Oregon.  Ms. Huskey had seen promotional advertisements and viewed the product label before buying DeckOver.

115.   Ms. Huskey applied the DeckOver to her deck.  She carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within months of application, the DeckOver began to degrade.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

116.   Had Ms. Huskey known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

117.   Ms. Huskey intends to continue to maintain her home's outside surfaces surfaces in the years to come, including by purchasing resurfacers or other coatings. She is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, she and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver, which crack and peel within a year of application.

**Paula Kastanis**

118.   Plaintiff Paula Kastanis purchased several containers of Behr DeckOver in 2016 from a Home Depot store in or near Poughkeepsie, New York.  Ms. Kastanis saw promotional advertisements for DeckOver and viewed the product label before buying DeckOver.

119.   Ms. Kastanis applied the DeckOver to her deck.  She carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within months of application, the DeckOver began to degrade.

120.   Had Ms. Kastanis known that DeckOver was incapable of providing durable surface coating, she would not have purchased or used the product.

121.   Ms. Kastanis intends to continue to maintain her home's outdoor surfaces in the years to come, including by purchasing resurfacers or other coatings.  She is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, she and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Erik Lagesen**

122.   Plaintiff Erik Lagesen purchased several gallons of Behr DeckOver in or around October 2013 from a Home Depot store in Holly Springs, Georgia.   Mr. Lagesen had seen advertisements and viewed the label before buying DeckOver.

123.   Mr. Lagesen applied DeckOver to his deck.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and he applied the product as instructed.  Shortly after application, the DeckOver product began to fail, cracking and peeling in numerous areas of Plaintiff Lagesen's deck.

124.   Had Mr. Lagesen known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

125.   Mr. Lagesen intends to continue to maintain his home's outside surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Brian Lange**

126.   Plaintiff Brian Lange purchased several containers of Behr DeckOver in 2013 from a Home Depot store in Poplar Bluff, Missouri.  Mr. Lange had seen advertisements for DeckOver and viewed the product label before buying DeckOver.

127.   Mr. Lange applied DeckOver to his deck.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.   Within months of application, the DeckOver applied to Plaintiff Lange's deck began to fail.

128.   Had Mr. Lange known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

129.   Mr. Lange intends to continue to maintain his home's outdoor surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

**Laurie McCall**

130.   Plaintiff Laurie McCall authorized a contractor to purchase Behr DeckOver in or around September 2014, from a Home Depot store in Southern California.  Ms. McCall paid for the DeckOver after viewing a Behr DeckOver brochure that showed images of DeckOver containers along with bullet points that repeated claims from the product label, including "Resists cracking & peeling" and "Durable, mildew resistant finish."

131.   After receiving Ms. McCall's authorization, the contractor purchased and applied DeckOver on her behalf to several wooden surfaces around her home.  Within six months, the DeckOver began to chip off, and cracks appeared in the coating.

132.   Had Ms. McCall known that DeckOver was incapable of providing durable surface coating, she would not have purchased or used the product.

133.   Ms. McCall continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  She is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, she and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Glen Meyers**

134.   Plaintiff Glen Meyers purchased about six 1-gallon containers of Behr DeckOver in May 2015 from a Home Depot store in Mentor, Ohio.  Mr. Meyers had seen DeckOver advertised in the Home Depot store.  Mr. Meyers also reviewed the product label before buying DeckOver.

135.   Mr. Meyers applied the DeckOver to his deck, stairs, railing and spindles in May 2015.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, by around September 2015, the DeckOver began to bubble, peel, and chip.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

Soon after, the DeckOver was peeling off in large strips, exposing the wood underneath.

136.   Had Mr. Meyers known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

137.   Mr. Meyers continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that, without an injunction forcing Behr to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver, which crack and peel within a year of application.

**Thomas Noftzger**

138.   Plaintiff Thomas Noftzger purchased at least four 1-gallon containers of Behr DeckOver in or around July 2016 from a Home Depot store in Kansas City, Missouri.  Mr. Noftzger had seen television advertisements for DeckOver and viewed the product label before buying DeckOver.

139.   Mr. Noftzger applied the DeckOver to several wood surfaces around his home, including a deck, railings, and steps.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within two months, the DeckOver began to crack and peel off the wood surfaces.

140.   Had Mr. Noftzger known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

Mr. Noftzger continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and

34

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Darin Richey**

141.   Plaintiff Darin Richey purchased two 1-gallon containers of Behr DeckOver in June 2016, from a Home Depot store in Poughkeepsie, New York.  Mr. Richey had seen television advertisements for DeckOver and viewed an in-store display.  Mr. Richey also reviewed the product label before buying DeckOver.

142.   Mr. Richey applied the DeckOver to several wood surfaces around his home, including a deck and railings, in early August 2016.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within six months, the DeckOver began to bubble and pull off the wood surfaces, and cracks appeared in the coating.  Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

143.   In May 2017, Mr. Richey called Behr and told them that DeckOver had peeled off his deck and railings within six months of application.  Behr's only offer was to send him a free gallon of DeckOver.  Had Mr. Richey known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

144.   Mr. Richey continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

**Philip Ross**

145.   Plaintiff Philip Ross purchased approximately 25 gallons of DeckOver in Oregon in 2014.   Mr. Ross had seen television and in-store advertisements for DeckOver and viewed the product label before buying DeckOver.

146.   Mr. Ross applied the DeckOver to his deck, hand rails, vertical supports, and balusters in or around July and August of 2014.   He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.

147.   During the summer of 2015, small cracks began to develop all over Plaintiff's deck.   Plaintiff contacted Home Depot and was told that this was normal, and to simply add a little more product to the cracked areas.   Plaintiff bought and applied three more gallons of DeckOver to cover the cracks.

148.   During the summer of 2016 large cracks began to appear everywhere. Plaintiff again contacted Home Depot about this and was told employees were not allowed to discuss product failures.   Most recently, in June 2017, the DeckOver has begun peeling everywhere on Plaintiff's deck.   When Plaintiff attempted to contact Behr Process Corporation, they hung up on him.

149.   Had Mr. Ross known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

150.   Mr. Ross intends to continue to maintain his home's outside surfaces in the years to come, including by purchasing resurfacers or other coatings.   He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

**Diane and Ronald Stricklin**

151. Plaintiffs Diane and Ronald Stricklin purchased approximately 15 gallons of DeckOver in 2016 from a Home Depot store near their home in Berywn, Illinois. They had seen advertisements for DeckOver and viewed the product label before buying DeckOver. The DeckOver was applied to their deck in accordance with the instructions.

152. Shortly after application, the DeckOver product began to fail, cracking and peeling in numerous areas of their deck.

153. While Behr offered to provide Plaintiffs Diane Stricklin and Ronald Stricklin with replacement DeckOver product, neither Behr nor Home Depot has offered to refund the cost of the DeckOver or to pay the costs associated with repairing the harm caused by its use.

154. Had the Stricklins known that DeckOver was incapable of providing durable surface coating, they would not have purchased or used the product.

155. The Stricklins intend to continue to maintain their outdoor surfaces in the years to come, including by purchasing resurfacers or other coatings. They are concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, they and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Bruce Tobey**

156. Plaintiff Bruce Tobey purchased approximately eight 1-gallon containers of Behr DeckOver in early summer 2016 from a Home Depot store in Succasunna, New Jersey. Mr. Tobey had seen promotional advertisements for DeckOver in magazines and also viewed the product label before buying DeckOver.

157. Mr. Tobey applied the DeckOver to several wood surfaces around his home, including a deck and railings, in summer 2016. He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

product as instructed.  Less than a year later, the DeckOver began to chip and peel off the wood surfaces.  Soon after, the DeckOver was cracking and coming off in pieces, completely exposing the wood underneath.

158.   Had Mr. Tobey known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

159.   Mr. Tobey continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Charles Weygant**

160.   Plaintiff Weygant purchased a container of Behr DeckOver in or around the summer of 2015 from a Home Depot store in Minnesota.  Mr. Weygant had seen advertisements for DeckOver in the Home Depot store.  Mr. Weygant also reviewed the product label before buying DeckOver.

161.   Mr. Weygant applied the DeckOver to his wood deck on his home in the summer of 2015.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, the DeckOver began to bubble, crack, and peel off the wood surfaces.

162.   Had Mr. Weygant known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.  Mr. Weygant continues to own a home with a wooden surface outside and intends to continue to maintain that surface in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and

38

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Zenas Whitehead**

163.   Plaintiff Zenas Whitehead purchased five 5-gallon containers of Behr DeckOver between July 2015 and August 2015 from a Home Depot store in Oxford, Massachusetts.  Mr. Whitehead had seen online advertisements and in-store promotions for DeckOver, and viewed the product label before buying DeckOver.

164.   Mr. Whitehead applied the DeckOver to several wood surfaces around his home, including a deck and railings.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  By November or December 2015, strips of DeckOver began to peel off the surface of his deck.  A few months later, the railings started peeling as well.

165.   In approximately February or March 2016, Mr. Whitehead's wife went back to Home Depot and complained that DeckOver had peeled off their deck within months of application.  Home Depot told her to contact Behr.  She complained to Behr by phone, email, and Facebook, but received no response.  Had Mr. Whitehead known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

166.   Mr. Whitehead continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

**Heather Wood**

167.   Plaintiff Heather Wood purchased several gallons of DeckOver in or around March 2017 from a Home Depot store in Loveland, Colorado.  Ms. Wood had seen advertisements for DeckOver and reviewed the product label before buying DeckOver.

168.   Ms. Wood applied the DeckOver to her deck.  She carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Shortly after application, the DeckOver product began to fail, cracking and peeling in numerous areas of Plaintiff Wood's deck.

169.   Had Ms. Wood known that DeckOver was incapable of providing durable surface coating, she would not have purchased or used the product.

170.   Ms. Wood intends to continue to maintain her home's outdoor surfaces in the years to come, including by purchasing resurfacers or other coatings.  She is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, she and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**David Wormwood**

171.   Plaintiff David Wormwood purchased approximately five or six 5-gallon containers of Behr DeckOver on July 11, 2014, from a Home Depot store in Topsham, Maine.  Mr. Wormwood had seen television advertisements for DeckOver.  Mr. Wormwood also reviewed the product label before buying DeckOver.

172.   Plaintiff Wormwood applied the DeckOver to two wood decks on his home in September 2014.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, the DeckOver began to bubble, crack, and peel off the wood surfaces.  Soon after, the DeckOver was peeling off in large strips, completely exposing the wood underneath.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

173.   In December 2014, Mr. Wormwood called Behr and told them that DeckOver had cracked, bubbled, and peeled off his deck within a few months of application.  Behr's only offer was to send him free DeckOver.

174.   Had Mr. Wormwood known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

175.   Mr. Wormwood continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

**Bryon Zablotny**

176.   Plaintiff Zablotny purchased a container of Behr DeckOver in or around the summer of 2015 from a Home Depot store in New York.  Mr. Zablotny had seen advertisements for DeckOver in the Home Depot store.  Mr. Zablotny also reviewed the product label before buying DeckOver.

177.   Mr. Zablotny applied the DeckOver to his wood deck on his home in the summer of 2015.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, the DeckOver began to bubble, crack, and peel off the wood surfaces.

178.   Had Mr. Zablotny known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product. Mr. Zablotny continues to own a home with a wooden surface outside and intends to continue to maintain that surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr and Home Depot to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and

overpaying for resurfacers like DeckOver which crack and peel within a year of application.

## CLASS ACTION ALLEGATIONS

179.   This action is brought and may be maintained under Fed. R. Civ. P. 23 as a class action.

180.   Plaintiffs seek to represent the following Classes:

Nationwide Class:  All persons who purchased a Behr Premium DeckOver product in the United States.

California Class:  All persons who purchased a Behr Premium DeckOver product in the state of California.

Colorado Class:  All persons who purchased a Behr Premium DeckOver product in the state of Colorado.

Florida Class:  All persons who purchased a Behr Premium DeckOver product in the state of Florida.

Georgia Class:  All persons who purchased a Behr Premium DeckOver product in the state of Georgia.

Illinois Class:  All persons who purchased a Behr Premium DeckOver product in the state of Illinois.

Maine Class:  All persons who purchased a Behr Premium DeckOver product in the state of Maine.

Massachusetts Class:  All persons who purchased a Behr Premium DeckOver product in the state of Massachusetts.

Michigan Class:  All persons who purchased a Behr Premium DeckOver product in the state of Michigan.

Minnesota Class:  All persons who purchased a Behr Premium DeckOver product in the state of Minnesota.

Missouri Class:  All persons who purchased a Behr Premium DeckOver product in the state of Missouri.

<u>New Jersey Class</u>:  All persons who purchased a Behr Premium DeckOver product in the state of New Jersey.

<u>New Mexico Class</u>:  All persons who purchased a Behr Premium DeckOver product in the state of New Mexico.

<u>New York Class</u>:  All persons who purchased a Behr Premium DeckOver product in the state of New York.

<u>Ohio Class</u>:  All persons who purchased a Behr Premium DeckOver product in the state of Ohio

<u>Oregon Class</u>:  All persons who purchased a Behr Premium DeckOver product in the state of Oregon.

<u>Pennsylvania Class</u>:  All persons who purchased a Behr Premium DeckOver product in the state of Pennsylvania.

<u>Implied Warranty Class</u>:  All persons who purchased a Behr Premium DeckOver product in any state in the United States or the District of Columbia, excluding Louisiana.

181.   Excluded from the classes are: (1) Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; (3) the judge(s) to whom this case is assigned, his or her spouse, and members of the judge's staff; and (4) anyone who purchased DeckOver for resale.

182.   Plaintiffs and class members seek relief under Rule 23(b)(2).  The injunctive relief Plaintiffs and class members seek is a significant reason for bringing this case and, on its own, justifies the prosecution of this litigation.  Plaintiffs and class members also seek relief under Rule (b)(3) and/or (c)(4).

183.   **Numerosity**: Behr has manufactured, and Home Depot has sold, DeckOver to at least thousands of proposed class members.  Members of the proposed classes are thus too numerous to practically join in a single action.  Class members

---

43

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

184. **<u>Commonality and Predominance</u>**: Common question of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members.  These common questions include whether:

a. Defendants marketed DeckOver as a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces;

b. DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application;

c. Defendants' marketing of DeckOver was false, deceptive, and misleading to reasonable consumers;

d. Defendants knew DeckOver was not a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces and is instead susceptible to peeling, chipping, bubbling, and degrading within months of application;

e. DeckOver's propensity to peel, chip, bubble, and generally degrade within months of application, rather than provide long-lasting protection for wood and concrete surfaces, would be important to a reasonable consumer;

f. Defendants failed to disclose DeckOver's propensity for peeling, chipping, bubbling, and degrading within months of application;

g. DeckOver was fit for the ordinary purpose for which DeckOver would be used, and conformed to the promises or affirmations of fact made on the container or label; and

h. Whether Defendants' conduct violates various state consumer protection statutes.

44

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

185.   **Typicality**: Plaintiffs' claims are typical of the claims of the proposed classes.  Plaintiffs and the members of the proposed classes all purchased DeckOver, giving rise to substantially the same claims.

186.   **Adequacy**: Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the members of the classes they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on class members' behalf.

187.   **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible.  Even if class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from this issue, individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

188.   In the alternative, the proposed classes may be certified because:

    a.   The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

    b.   The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

non-party class members or which would substantially impair their ability to protect their interests; and

   c.   Defendants have acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

## CHOICE OF LAW ALLEGATIONS

189.   The State of California has sufficient contacts to the conduct alleged herein such that California law may be uniformly applied to the claims of the proposed nationwide class against Behr.

190.   Behr does substantial business in California.  Home Depot, where Behr products are sold, maintains over 200 locations in California.  Behr Process Corporation and Behr Paint Corporation are both headquartered in California, and Behr's promotional activities arise from conduct in the State of California.  Further, a significant portion of the proposed Nationwide Class is located in California.

191.   On its website, Behr purports to require that the "sale of [Behr's] products" be "construed and interpreted, and the rights of the parties determined, in accordance with the laws of the State of California . . . ."

192.   In addition, the conduct that forms the basis for each and every class member's claims against Defendants emanated from Behr Process Corporation and Behr Paint Corporation's headquarters in Santa Ana, California.  Behr marketing executives are based in California, including Behr Process Corporation's Vice President of Digital Marketing, Masco's Coating Group's Vice President of Marketing Communications, and Behr's Marketing Director.

193.   The State of California also has the greatest interest in applying its law to class members' claims.  Its governmental interests include not only an interest in compensating resident consumers under its consumer protection laws, but also what the State has characterized as a "compelling" interest in using its laws to regulate a

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

1  resident corporation and preserve a business climate free of fraud and deceptive

2  practices. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1064

3  (1999).

4      194.   If other states' laws were applied to class members' claims, California's

5  interest in discouraging resident corporations from engaging in the sort of unfair and

6  deceptive practices alleged in this complaint would be significantly impaired.

7  California could not effectively regulate a company like Behr Process Corporation or

8  Behr Paint Corporation that does business throughout the United States if it can ensure

9  that consumers from only one of the fifty states affected by conduct that runs afoul of

10 its laws are compensated.

## **TOLLING OF STATUTES OF LIMITATIONS**

12     195.   Discovery Rule: Plaintiffs' and class members' claims accrued upon

13 discovery that DeckOver is not a durable resurfacer and is not capable of providing

14 long-lasting protection for wood and concrete surfaces, but is instead prone to

15 promptly peeling, chipping, bubbling, and degrading within months of application.

16 While Defendants knew, and concealed, these facts, Plaintiffs and class members

17 could not and did not discover these facts through reasonable diligent investigation

18 until after they experienced the aftermath of DeckOver application and learned that

19 the problem was not isolated to their DeckOver.

20     196.   Active Concealment Tolling: Any statutes of limitations are tolled by

21 Defendants' knowing and active concealment of the facts set forth above.  Defendants

22 kept Plaintiffs and all class members ignorant of vital information essential to the

23 pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs.

24 The details of Defendants' efforts to conceal their above-described unlawful conduct

25 are in their possession, custody, and control, to the exclusion of Plaintiffs and class

26 members, and await discovery.  Plaintiffs could not have reasonably discovered these

27 facts, nor that Defendants failed to disclose material facts concerning DeckOver's

28 performance.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

197.   <u>Estoppel</u>: Defendants were and are under a continuous duty to disclose to Plaintiffs and all class members the true character, quality, and nature of DeckOver. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of DeckOver.  The details of Defendants' efforts to conceal their above-described unlawful conduct are in their possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery.  Plaintiffs reasonably relied on Defendants' active concealment.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

198.   <u>Equitable Tolling</u>: Defendants took active steps to conceal and misrepresent material facts relating to DeckOver's performance.  The details of Defendants' efforts are in their possession, custody, and control, to the exclusion of Plaintiffs and class members, and await discovery.  When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims.  Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## **<u>CAUSES OF ACTION</u>**

### **<u>Count I</u>**

### **Unlawful, Unfair, and Fraudulent Business Practices**

### **Cal. Bus. & Prof. Code § 17200, *et seq*.**

### **(All Plaintiffs on Behalf of the Nationwide Class Against the Behr Defendants, and Plaintiff McCall on Behalf of the California Class Against the Home Depot Defendants and, in the Alternative, Against the Behr Defendants)**

199.   Plaintiffs re-allege the paragraphs above as if set forth fully herein.

200.   Defendants have violated and continue to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

201.   Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law.  In particular, Defendants manufactured, distributed, marketed, and sold DeckOver to the public even though DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application.  Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise.

202.   Defendants' business acts and practices are unlawful in that they violate the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, for the reasons set forth in this complaint.

203.   Defendants' acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer.  As described above, Defendants knowingly misrepresent and conceal material facts related to DeckOver's performance.  Had Defendants not misrepresented and concealed these facts, Plaintiffs, class members, and reasonable consumers would not have purchased DeckOver or would have paid significantly less for them.

204.   Defendants' conduct also constitutes unfair business practices for at least the following reasons:

    a.  The gravity of harm to Plaintiffs and the proposed class from Defendants' acts and practices far outweighs any legitimate utility of that conduct;

    b.  Defendants' conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the proposed nationwide class; and

    c.  Defendants' conduct undermines and violates the stated policies underlying the Consumers Legal Remedies Act—to protect

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

205.   As a direct and proximate result of Defendants' business practices, Plaintiffs and proposed class members suffered injury in fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for.  Plaintiffs and the proposed classes are entitled to an injunction and other equitable relief, including restitutionary disgorgement of all profits accruing to Defendants, because of their unfair and deceptive practices, and such other orders as may be necessary to prevent the future use of these practices.

## Count II

### Violation of California Consumers Legal Remedies Act
### Cal. Civ. Code § 1750, *et seq.*

**(All Plaintiffs on Behalf of the Nationwide Class Against the Behr Defendants, and Plaintiff McCall on Behalf of the California Class Against the Home Depot Defendants and, in the Alternative, Against the Behr Defendants)**

206.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

207.   Defendants are each a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and have provided "goods" within the meaning of Civil Code §§ 1761(b) and 1770.

208.   Plaintiffs and members of the proposed class are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

209.   Defendants' acts and practices were intended to result and did result in the sale of DeckOver, and violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

      a.   Defendants represent DeckOver has characteristics, uses, and benefits which it does not have;

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

b.  Defendants represent that DeckOver is of a particular standard, quality, and grade when it is not;

c.  Defendants represent that transactions involving DeckOver conferred or involved rights, remedies, and obligations which they do not; and

d.  Defendants represent that DeckOver has been supplied in accordance with a previous representation when it has not.

210.  As described above, Defendants manufactured, distributed, marketed, and sold DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading soon after application.

211.  Had Defendants not misrepresented and concealed material facts about DeckOver, Plaintiffs, members of the proposed classes, and reasonable consumers would not have purchased or would have paid less for DeckOver.

212.  Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiffs Darin Richey, Thomas Noftzger, Aaron Amborn, Bruce Tobey, Laurie McCall, Zenas Whitehead, William Elger, and Philip Ross sent a notice letter to Defendants to provide them with an opportunity to correct their business practices.  Defendants did not thereafter correct their business practices.

213.  Pursuant to California Civil Code § 1780, Plaintiffs seeks injunctive relief, reasonable attorney fees and costs, and any other relief that the Court deems proper.  Plaintiffs Richey, Noftzger, Amborn, Tobey, McCall, and Whitehead also seek restitution and actual damages.

## Count III

### Unjust Enrichment

### (All Plaintiffs on Behalf of the Nationwide Class Against the Behr Defendants, and on Behalf of the State Classes Against the Home Depot Defendants)

214.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

215.   As described above, Defendants marketed, distributed, and sold DeckOver as a long-lasting, durable deck resurfacer without disclosing that in reality, the coating begins to strip and peel off soon after application.

216.   As a result of its fraudulent acts and omissions related to DeckOver, Defendants obtained monies which rightfully belong to Plaintiffs and the proposed Nationwide Class and State Class members to the detriment of Plaintiffs and the proposed Nationwide Class and State Class members.

217.   Defendants appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Nationwide Class members and State Class members, who, without knowledge that the DeckOver would not perform as advertised, paid a higher price for the product than it was worth.  Defendants also received monies for DeckOver that Plaintiffs and the proposed Nationwide Class and State Class members would not have otherwise purchased.

218.   It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

219.   Defendants retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

220.   Each Plaintiff and the proposed class(es) he or she represents is entitled to his or her respective laws to restitution of the profits

## Count IV

### Violation of the Colorado Consumer Protection Act ("CCPA")

### Colorado Revised Statute §§ 6-1-101-115

### (Plaintiffs Heather Wood and Stacey Clow on Behalf of the Colorado Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

221.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

222.    Plaintiff Wood and Plaintiff Clow bring this cause of action on behalf of themselves and the members of the Colorado Class.

223.    Defendants have violated, and continue to violate, the CCPA, which prohibits deceptive trade practices, including, *inter alia*, false and deceptive representations regarding consumer products.

224.    In the normal course of their businesses, Defendants market and/or sell BEHR DeckOver products throughout the United States and the State of Colorado. Defendants continue to market and/or sell Behr DeckOver products which, as alleged above, are defective and unfit for the purpose for which they are sold.

225.    Pursuant to the CCPA, it is unlawful to "[r]epresent[] that goods . . . are of a particular standard, quality, or grade . . . if he knows or should know that they are of another."  Defendants marketed DeckOver as being a high-quality and durable product despite the fact that it is prone to peeling, chipping, bubbling, degrading, and otherwise failing shortly after application, and despite proper surface preparation and application. Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise, despite touting and advertising DeckOver as a high-quality, durable product

226.    Pursuant to the CCPA, it is unlawful to "[s]how[] or demonstrat[e] defective goods, property, or services which are unusable or impractical for the purposes set forth in the advertisement."  Defendants marketed, distributed,

53

advertised, and sold DeckOver even though DeckOver is not a durable deck/patio resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces.

227.    As a direct and proximate result of the Defendants' business practices, Plaintiff Wood, Plaintiff Clow, and the members of the Colorado Class suffered injury in fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for.  Plaintiff Wood, Plaintiff Clow, and the Colorado Class are entitled to damages, statutory damages, and attorneys' fees and costs.

## Count V

### Violation of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. 501.201-.213, *et seq.*

### (Plaintiff Bruce Hultmark on Behalf of the Florida Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

228.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

229.    Plaintiff Hultmark brings this cause of action on behalf of himself and the Florida Class against all Defendants.

230.    Defendants have violated and continue to violate Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201-.213, *et seq* (the "FDUTPA").

231.    The FDUTPA protects "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. 501.202(2).

232.    Plaintiff is a consumer within the meaning of Fla. Stat. § 501.203(7).

233.    Defendants engaged in trade and commerce within the meaning of Fla. Stat. § 501.203(8).

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

234.     The   FDUTPA   incorporates   by   reference   the   Federal   Trade
Commission's interpretations of the terms "deceptive" and "unfair." The FTC has
found that a "deceptive act or practice" encompasses "a representation, omission or
practice that is likely to mislead the consumer acting reasonably in the circumstances,
to the consumer's detriment.

235.     Defendants manufactured, distributed, marketed, and sold DeckOver to
the public even though DeckOver is not a durable resurfacer and is not capable of
providing long-lasting protection for wood and concrete surfaces, but is instead prone
to promptly peeling, chipping, bubbling, and degrading within months of application.
Defendants failed to disclose material facts concerning DeckOver's performance at
the point of sale and otherwise.

236.     Defendants' misrepresentations, omissions, deceptive acts, and unfair
practices, as described herein, would deceive an objectively reasonable consumer.

237.     As a result of Defendant's misrepresentations, omissions, deceptive
acts, and unfair practices, Plaintiff Hultmark and the members of the Florida Class
suffered actual damages by paying more for DeckOver than the product was worth.
Defendants' product was worthless and thus the Plaintiffs and Class Members'
damages are the purchase price of the product.

238.     In addition to actual damages, Plaintiffs and the Class are entitled to
declaratory and injunctive relief as well as reasonable attorney's fees and costs
pursuant to Fla. Stat. § 501.201, *et seq.*

## Count VI

### Violation of the Georgia Fair Business Practices Act

### OCGA § 10-1-390, *et seq.*

### (Plaintiff Erik Lagesen on Behalf of the Georgia Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

239.     Plaintiffs re-allege the paragraphs above as if fully set forth herein.

240.   Plaintiff Lagesen brings this cause of action on behalf of himself and the Georgia Class against all Defendants.

241.   Plaintiff Lagesen and the members of the Georgia Class are "consumers" under OCGA § 10-1-392(6).

242.   Plaintiff Lagesen, all members of the Georgia Class, and Defendants are "Persons" under OCGA § 10-1-392(24).

243.   Pursuant to the OCGA, [u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."   OCGA § 10-1-393(a).  Unfair or deceptive acts include "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another."   OCGA § 10-1-393(b)(7). Defendants marketed, distributed, advertised, and sold DeckOver even though DeckOver is not a durable deck/patio resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces.

244.   Defendants marketed DeckOver as being a high-quality and durable product despite the fact that it is prone to peeling, chipping, bubbling, degrading, and otherwise failing shortly after application, and despite proper surface preparation and application. Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise, despite touting and advertising DeckOver as a high-quality, durable product.

245.   Defendants continue to market and sell DeckOver to consumers throughout the state of Georgia.  Thus, Defendants' practices have, and will continue to have, an impact on the consumer marketplace.

246.   As a direct and proximate result of the Defendants' business practices, Plaintiff Lagesen and the members of the Georgia Class suffered injury in fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for.  Plaintiff

Lagesen and the Georgia Class are entitled to damages, statutory damages, and attorneys' fees and costs.

247.   Plaintiff Lagesen asserts that notice to Defendants would be futile, as alleged above, Defendants have refused demands made by other Plaintiffs.

## Count VII

### Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act 815 Ill. Stat. § 505/1, *et seq.*

### (Plaintiffs Diane and Ronald Stricklin on Behalf of the Illinois Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

248.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

249.   The DeckOver product marketed and sold by Defendants is "merchandise" as defined in 815 Ill. Stat. § 505/1(b).

250.   Plaintiffs Diane Stricklin and Ronald Stricklin, the members of the Illinois Subclass, and Defendants are "person[s]" as defined in 815 Ill. Stat. § 505/1(c).

251.   As Defined in 815 Ill. Stat. § 505/1(f) "trade" and "commerce" are: the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

252.   In the course of the distribution, marketing, and/or sale of DeckOver, Defendants engaged in trade and commerce.

253.   The Consumer Fraud Act, 815 Ill. Stat. § 505/2 prohibits engagement in: unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact" is illegal.

254.   Defendants marketed, distributed, advertised, and sold DeckOver even though DeckOver is not a durable deck/patio resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces.

255.   Defendants marketed DeckOver as being a high-quality and durable product despite the fact that it is prone to peeling, chipping, bubbling, degrading, and otherwise failing shortly after application, and despite proper surface preparation and application. Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise, despite touting and advertising DeckOver as a high-quality, durable product.

256.   As a direct and proximate result of the Defendants' business practices, Plaintiffs Diane Stricklin and Ronald Stricklin and the members of the Illinois Subclass suffered injury in fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for.  Plaintiffs Diane Stricklin and Ronald Stricklin and the members of the Illinois Subclass are entitled to equitable relief, restitution, statutory damages, attorneys' fees, and other relief as the court may deem necessary.

## Count VIII

### Violation of the Uniform Deceptive Trade Practices Act

### 815 Ill. Stat. § 510/2, *et seq.*

### (Plaintiffs Diane and Ronald Stricklin on Behalf of the Illinois Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

257.   Plaintiffs re-allege the paragraphs above as if set forth fully herein.

258.   Plaintiffs Diane Stricklin and Ronald Stricklin bring this cause of action on behalf of themselves and the members of the Illinois Subclass.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

259.   Defendants market, distribute, and/or sell DeckOver at Home Depot locations throughout the State of Illinois.

260.   Pursuant to the Deceptive Trade Practices Act, "a person engages in an deceptive trade practice when" they "represent[] that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have . . . ." 815 Ill. Stat. § 510/2(a)(5). Defendants marketed, distributed, advertised, and sold DeckOver even though DeckOver is not a durable deck/patio resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces.

261.   Defendants marketed DeckOver as being a high-quality and durable product despite the fact that it is prone to peeling, chipping, bubbling, degrading, and otherwise failing shortly after application, and despite proper surface preparation and application. Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise, despite touting and advertising DeckOver as a high-quality, durable product.

262.   As a direct and proximate result of the Defendants' business practices, Plaintiffs Diane Stricklin and Ronald Stricklin and the members of the Illinois Subclass suffered injury in fact and lost money or property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for.

263.   Defendants' continued marketing, distribution, and sale of DeckOver products will continue to harm Illinois residents, unless Defendants are enjoined from its continued sale.  Thus, Plaintiffs Diane Stricklin and Ronald Stricklin and the members of the Illinois Subclass are entitled to injunctive relief, attorneys' fees, and other relief as the court may deem necessary.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

## Count IX

### Violation of the Maine Unfair Trade Practices Act

### (Plaintiff David Wormwood on Behalf of the Maine Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

264.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

265.   The Maine Unfair Trade Practices Act ("MUTPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  5 M. R.S.A. § 207.

266.   The Act provides a private right of action for any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and herby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful."  5 M.R.S. § 213.

267.   Plaintiff and proposed class members are persons as defined in 5 M.R.S. § 206.

268.   At all relevant times, Defendants conducted trade or commerce in Maine as defined in 5 M.R.S. § 206(3).

269.   DeckOver was purchased by Plaintiff and proposed class members for personal, family and/or household purposes.

270.   Defendants engaged in unfair methods of competition by manufacturing, distributing, marketing, and selling DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

271.   Defendants engaged in unfair methods of competition by knowingly selling DeckOver when it had knowledge that the product is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete

surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading within months of application.  Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and proposed class members.

272.   Defendants failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

273.   In connection with the sale, Defendants never disclosed to Plaintiff and Proposed Class Members that the DeckOver was defective.

274.   The facts that Defendants failed to disclose were material, and Defendants' failure to disclose such facts tended to mislead or deceive Plaintiff and Proposed Class Members.  Defendants should have revealed the facts that were material to the transaction in light of the representations of fact made in a positive matter.  Defendants' failure to disclose the facts constitutes an unfair method of competition.

275.   Defendants failed to give Plaintiff and Proposed Class Members adequate warnings and notices regarding the defects in the DeckOver despite the fact that Defendants knew or should have known of this defect, with the intent that Plaintiff and the Proposed Class Members would rely upon Defendants' failure to disclose the defect when purchasing the DeckOver.  Thus, Defendants' knew of the defective nature of the DeckOver and yet continued to sell and distribute them to Plaintiff and proposed class members and concealed its known defects from them.

276.   Defendants' acts and practices were unfair in that they caused or were likely to cause substantial injury to Plaintiff and proposed class members which was not reasonably avoidable by Plaintiff and proposed class members and not outweighed by countervailing benefits to consumers or to competition.

277.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the proposed class members have

suffered a loss and were injured.  Plaintiff and proposed class members were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

278.   If Plaintiff and proposed class members knew about the true nature of the DeckOver, they would not have purchased it or would have paid less for it.

279.   Defendants are engaging in or about to engage in the conduct described herein and will continue to do so unless restrained.

280.   Pursuant to the provisions of the Maine Consumer Protection Act, Plaintiff provided a letter to the Behr and Home Depot Defendants with notice of their alleged violations of the MUTPA, demanding that Defendants correct such violations, and providing them with the opportunity to correct their business practices.  If the Defendants do not thereafter correct their business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Maine Consumer Protection Act. Pursuant to Maine Consumer Protection Act, Plaintiff seeks injunctive relief, reasonable attorney fees and costs, and any other relief that the Court deems proper.

## Count X

### Violation of Massachusetts' Consumer Protection Act,

### Mass. Gen. Laws, ch. 93A, *et seq.*

### (Plaintiff Zenas Whitehead on Behalf of the Massachusetts Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

281.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

282.   Mass. Gen. Laws ch. 93A § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

283.   At all relevant times, Defendants engaged in "trade or commerce" as defined by Mass. Gen. Laws, ch. 93A § 1(b), including through advertising, distributing, and selling DeckOver to Plaintiff and proposed class members.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

284. Defendants violated Mass. Gen. laws ch. 93A by engaging in unfair and deceptive acts or practices in the conduct of trade or commerce.

285. In connection with the sale of DeckOver to Plaintiff and proposed class members, Defendants misrepresented and concealed material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading soon after application.

286. As a direct and proximate result of Defendants' unlawful methods, acts, and practices, Plaintiff and the proposed class members lost money or property because they purchased DeckOver when they otherwise would not have, or in the alternative, would have paid less. Meanwhile, Defendants have sold more DeckOver than it otherwise could have and charged inflated prices for the DeckOver, unjustly enriching itself thereby.

287. Plaintiff made a demand for relief, in writing, to Defendants at least thirty days prior to filing this amended complaint, as required by Mass. Gen. Laws Ch. 93A, § 9.

288. Defendants' deceptive acts and practices were willful and knowing because they knew about the peeling, chipping, bubbling, and degrading and chose not to implement several viable options to mitigate the problem and likewise chose not to disclose the problem to consumers.

289. Pursuant to Mass. Gen. Laws ch. 93A, Plaintiff and the proposed Massachusetts class seek equitable relief, including injunction; actual damages or statutory damages in the amount of twenty-five dollars per violation (whichever is greater); double or treble damages; as well as their reasonable costs and attorneys' fees.

**Count XI**

**Violation of Michigan Consumer Protection Act**

**Mich. Comp. Laws §§ 445.901, *et seq.* ("MCPA")**

**(Plaintiffs William Elger and Aaron Corneail on Behalf of the Michigan Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)**

290.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

291.   The MCPA is designed to provide a remedy for consumers who are injured by deceptive business practices. The MCPA expressly allows for class actions on behalf of consumers who have suffered a loss as a result of a violation of the Act. MICH. COMP. LAWS § 445.911(3).

292.   Plaintiffs Elger and Corneail, Michigan Class members, and Defendants fall within the definition of "person" under the MCPA.

293.   Defendants' conduct alleged herein constitutes unfair, unlawful, unconscionable, and deceptive acts in violation of the MCPA, including, but not necessarily limited to, the following sections:

      a.    § 445.903(n): causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;

      b.    § 445.903(s): failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

      c.    § 445.903(bb): making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

d.    § 445.903(cc): failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

294.   Defendants' conduct also constitutes unfair business practices for at least the following reasons:

a.    The gravity of harm to Plaintiff and the proposed class members from Defendants' acts and practices far outweighs any legitimate utility of that conduct;

b.    Defendants' conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the proposed class; and

c.    Defendants' conduct undermines and violates the stated policies underlying the MCPA —to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

295.   Specifically, as alleged herein, Defendants knowingly made (or should have known they were making) misrepresentations about the quality, qualities, characteristics, performance, and reliability of DeckOver.

296.   Defendants concealed, omitted, and failed to disclose the truth about DeckOver Products in order to make sales and increase profits.

297.   Because of Defendants' violation of the MCPA, Plaintiffs Elger and Corneail and members of the Michigan Class were injured in that they overpaid for DeckOver and did not receive the benefit of their bargain, and, as a result of the failures of the DeckOver Products, their properties have suffered a diminution in value and Plaintiffs and Class members have been required to pay out of pocket for repairs and restoration of their decks and other structures. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

298.   As a direct and proximate result of Defendants' business practices, Plaintiffs and proposed class members suffered injury in fact and lost money or

property, because they purchased and paid for products that they otherwise would not have, or in the alternative, would have paid less for.

299.    Plaintiffs and proposed class members are entitled to an injunction and other equitable relief, including restitutionary disgorgement of all profits accruing to Defendants, because of their unfair and deceptive practices, and such other orders as may be necessary to prevent the future use of these practices. Mich. Comp. Laws Ann. § 445.911.

**Count XII**

**Violation of Minnesota Consumer Fraud Act**

**Minn. Stat. §§ 325F.68-325F.69**

**(Plaintiffs Aaron Amborn and Charles Weygant on Behalf of the Minnesota Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)**

300.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

301.    Plaintiffs Aaron Amborn and Charles Weygant and Minnesota Class members purchased DeckOver for their own use as consumers and not for resale. They are "persons" under Minn. Stat. § 325F.68, subd. 3.

302.    Plaintiffs and class members have standing to bring this claim pursuant to Minn. Stat § 8.31, subd. 3a, the Private Attorney General statute, which provides that any person injured by a violation of this Act may bring a civil action.

303.    Defendants' acts and practices, as alleged in this complaint, constitute deceptive, unfair, fraudulent, and misleading acts and practices.  In particular, Defendants manufactured, distributed, marketed, and sold DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that it is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

304.   Defendants concealed, suppressed, or omitted material facts with the intent that Plaintiffs and class members rely upon such concealment, suppression, or omission.  Defendants' acts and practices are objectively deceptive and thus likely to deceive a reasonable consumer.  As described above, Defendants knowingly conceal and fail to disclose at the point of sale or otherwise that DeckOver is prone to promptly peeling, chipping, bubbling, and degrading within months of application. Had Defendants disclosed this fact, Plaintiffs, class members, and reasonable consumers would not have purchased DeckOver or would have paid significantly less for it.

305.   Defendants' conduct, which included deception, fraud, false pretenses, and the knowing concealment, suppression, or omission of material facts, caused and resulted in injury in fact and ascertainable loss of money or property to Plaintiff and class members, which injury was foreseeable to Defendants.  Among other things, Plaintiffs and class members purchased DeckOver that they otherwise would not have purchased.

306.   Plaintiffs bring this action on behalf of the public interest and the interests of Minnesota purchasers.  This action will benefit not only Plaintiffs, but also all members of the proposed Minnesota Class.  Further, any injunctive or equitable relief may benefit possible future purchasers of DeckOver.

307.   Defendants had knowledge of facts or intentionally disregarded facts that created a high probability of injury to the rights of others, yet continued to market, advertise, and sell DeckOver as described.

308.   Plaintiffs and class members are entitled, without limitation, to damages, punitive damages, equitable relief, and reasonable attorneys' fees and costs.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

## Count XIII

### Violation of Missouri Merchandising Practices Act

### Mo. Stat. § 407.010, *et seq.*

### (Plaintiffs Thomas Noftzger and Brian Lange on Behalf of the Missouri Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

309.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

310.   Plaintiffs Thomas Noftzger and Brian Lange and Missouri Class members were "persons" who purchased "merchandise" in "trade" or "commerce" as defined in Mo. Stat. § 407.010 when they purchased DeckOver for personal, family, and household purposes.

311.   Defendants' acts and practices, as alleged in this complaint, constitute deceptive, unfair, fraudulent, and misleading acts and practices.  In particular, Defendants manufactured, distributed, marketed, and sold DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that it is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

312.   Defendants concealed, suppressed, or omitted material facts with the intent that Plaintiffs and class members rely upon such concealment, suppression, or omission.  Defendants' acts and practices are objectively deceptive and thus likely to deceive a reasonable consumer.  As described above, Defendants knowingly conceal and fail to disclose at the point of sale or otherwise that DeckOver is prone to promptly peeling, chipping, bubbling, and degrading within months of application. Had Defendants disclosed this fact, Plaintiffs, class members, and reasonable consumers would not have purchased DeckOver or would have paid significantly less for it.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

313.   Defendants' conduct, which included deception, fraud, false pretenses, and the knowing concealment, suppression, or omission of material facts, caused and resulted in injury in fact and ascertainable loss of money or property to Plaintiffs and class members, which injury was foreseeable to Defendants.  Among other things, Plaintiffs and class members purchased DeckOver that they otherwise would not have purchased.

314.   Plaintiffs, on behalf of themselves and class members, seek an order enjoining Defendants from the unlawful business practices herein and requiring Defendants to notify class members that DeckOver does not perform as advertised.

315.   Plaintiffs and the other proposed class members are entitled to legal and equitable relief against Defendants, including damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## Count XIV

### Violation of New Jersey Consumer Fraud Act

### N.J. Stat. § 56:8-1, *et seq.*

### (Plaintiff Bruce Tobey on Behalf of the New Jersey Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

316.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

317.   Plaintiff Tobey and class members are "persons" described in N.J. Stat. § 56:8-1(d).

318.   Defendants sell DeckOver, which is "merchandise" as defined by N.J. Stat. Ann. § 56:8-1.  In particular, Defendants manufactured, distributed, marketed, and sold DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that it is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

319.   Defendants' conduct, which included unconscionable commercial practice, deception, fraud, false pretenses, false promise, misrepresentation, and the knowing concealment, suppression, or omission of material facts, caused and resulted in injury in fact and ascertainable loss of money or property to Plaintiffs and class members, which injury was foreseeable to Defendants.  Among other things, Plaintiffs and class members purchased DeckOver that they otherwise would not have purchased.

320.   Defendants concealed, suppressed, or omitted material facts with the intent that Plaintiffs and class members rely upon such concealment, suppression, or omission.  Defendants' acts and practices are objectively deceptive and thus likely to deceive a reasonable consumer.  As described above, Defendants knowingly conceal and fail to disclose at the point of sale or otherwise that DeckOver is prone to promptly peeling, chipping, bubbling, and degrading within months of application. Had Defendants disclosed this fact, Plaintiffs, class members, and reasonable consumers would not have purchased DeckOver or would have paid significantly less for it.

321.   Defendants' conduct caused and resulted in injury in fact and ascertainable loss of money or property to Plaintiffs and class members, which injury was foreseeable to Defendants.  Among other things, Plaintiffs and class members purchased DeckOver that they otherwise would not have purchased.

322.   Defendants willfully and knowingly engaged in the conduct described above.  Plaintiff and class members seek relief including but not limited to injunctive relief, actual damages, treble damages, and attorneys' fees and costs.

## Count XV

### Violation of New Mexico Unfair Trade Practices Act
### (Plaintiff Joel Darby on Behalf of the New Mexico Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

323.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

70

324.   The New Mexico Unfair Practices Act ("NMUPA") declares unlawful, "[U]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." N. M. S. A. 1978, § 57-12-3.

325.   Plaintiff and proposed class members are persons as defined in N. M. S. A. 1978, § 57-12-2.

326.   At all relevant times, Defendants conducted trade or commerce in New Mexico as defined in N. M. S. A. 1978, § 57-12-2.

327.   DeckOver was purchased by Plaintiff and proposed class members for personal, family and/or household purposes.

328.   Defendants engaged in unfair methods of competition by manufacturing, distributing, marketing, and selling DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

329.   Defendants engaged in unfair methods of competition by knowingly selling DeckOver when it had knowledge that the product is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading within months of application.  Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and proposed class members.

330.   Defendants' failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

331.   In connection with the sale, Defendants never disclosed to Plaintiff and Proposed Class Members that the DeckOver was defective.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

332.   The facts that Defendants failed to disclose were material, and Defendants' failure to disclose such facts tended to mislead or deceive Plaintiff and Proposed Class Members.   Defendants should have revealed the facts that were material to the transaction in light of the representations of fact made in a positive matter.  Defendants' failure to disclose the facts constitutes an unfair method of competition.

333.   Defendants failed to give Plaintiff and Proposed Class Members adequate warnings and notices regarding the defects in the DeckOver despite the fact that Defendants knew or should have known of this defect, with the intent that Plaintiff and the Proposed Class Members would rely upon Defendants' failure to disclose the defect when purchasing the DeckOver.  Thus, Defendants' knew of the defective nature of the DeckOver and yet continued to sell and distribute them to Plaintiff and proposed class members and concealed its known defects from them.

334.   Defendants' acts and practices were unfair in that they caused or were likely to cause substantial injury to Plaintiff and proposed class members which was not reasonably avoidable by Plaintiff and proposed class members and not outweighed by countervailing benefits to consumers or to competition.

335.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the proposed class members have suffered a loss and were injured.  Plaintiff and proposed class members were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

336.   If Plaintiff and proposed class members knew about the true nature of the DeckOver, they would not have purchased it or would have paid less for it.

337.   Defendants are engaging in or about to engage in the conduct described herein and will continue to do so unless restrained.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

Plaintiff and proposed class members are entitled pursuant to the New Mexico Consumer Unfair Practices Act to recover actual damages, equitable and injunctive relief and attorney's fees.

## Count XVI

### Violation of N.Y. Gen. Bus. Law § 349

**(Plaintiffs Darin Richey, Bryon Zablotny, Paula Kastanis, and James Droge on Behalf of the New York Class Against the Home Depot Defendants and, in the Alternative, Against the Behr Defendants)**

338.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

339.   Plaintiffs and class members are "persons" within the meaning of N.Y. Gen. Bus. § 349(h).

340.   Each Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of N.Y. Gen. Bus. § 349(b).

341.   Home Depot is Behr's exclusive distributor of DeckOver, thereby creating a marketing partnership.

342.   Under the New York Deceptive Acts & Practices Statute, "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" are unlawful.  N.Y. Gen. Bus. § 349.

343.   Defendants engaged in deceptive acts and practices in the conduct of business, trade, and commerce by manufacturing, distributing, marketing, and selling DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

344.   Defendants had exclusive knowledge of the fact that DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling,

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

and degrading within months of application.  Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiffs Richey and Zablotny and class members.

345.   Plaintiffs and class members were unaware, and did not have reasonable means of discovering, the material facts that Defendants both misrepresented and failed to disclose.

346.   Defendants' failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

347.   These acts and practices were consumer-oriented because they had a broad impact on consumers at large, affecting all purchasers of DeckOver.

348.   As a direct and proximate result of Defendants' unlawful methods, acts, and practices, Plaintiffs and proposed class members were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

349.   Defendants' acts and practices were willful and knowing.

350.   Plaintiffs and class members are entitled to injunctive relief, recovery of actual damages or fifty dollars per violation (whichever is greater), treble damages up to one thousand dollars, and their reasonable costs and attorneys' fees.  *See* N.Y. Gen. Bus. § 349(h).

## Count XVII

### Violation of Ohio Consumers Sales Practice Act

### Ohio Revised Code § 1345.01, *et seq.*

### (Plaintiffs Deborah Durda and Glen Meyers on Behalf of the Ohio Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

351.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

352.   Plaintiffs brings this claim individually and on behalf of the members of the Class against Defendants.

353.   This count is brought pursuant to Ohio's Consumer Sales Practices Act, Ohio Revised Code §§1345.01, et. seq. (the "CSPA").

354.   Plaintiffs are consumers as defined by Ohio Revised Code §1345.01(D).

355.   DeckOver is a good within the meaning of the CSPA.

356.   Defendants are suppliers as defined by Ohio Revised Code §1345.01(C).

357.   Defendants' conduct described herein involves consumer transactions as defined in Ohio Revised Code §1345.01(A).

358.   Defendants violated and continue to violate the CSPA by engaging in the following practices prescribed by the following subsections of Ohio Revised Code §1345.02 in consumer transactions with the Plaintiff and the Class, which were intended to result in, and did result in, the sale of the DeckOver to the Plaintiff and Proposed Class:

a.     (A) by "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction";

b.     (B)(1) by representing that the products have "performance characteristics . . . uses, or benefits that [they] do [not] have";

c.     (B)(2) by representing that the products are "of a particular standard, quality, grade, style [or] prescription" when they are not; and

d.     (B)(4) by representing that the product "is available to the consumer for a reason that does not exist; and

e.     (B)(5) by representing that the products are being "supplied in accordance with a previous representation," when they are not.

359.   Pursuant to Ohio Adm. Code 109:4-3-10 (A) (Substantiations of Claims In Advertising), it shall be a deceptive act or practice in connection with a consumer transaction for a supplier to "[M]ake any representations, claims or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe

such statements are true, unless, at the time such representations, claims or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims or assertions of fact."

360.   In conjunction with the violations of Ohio Revised Code §1345.02 set forth above, Defendants violated Ohio Adm. Code §109:4-3-10 because they misrepresent and conceal material facts about DeckOver, including that it is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

361.   Defendants' representations regarding the durability and protection of DeckOver had the capacity, tendency, or effect of deceiving or misleading consumers.

362.   Also, Defendants represented that DeckOver's durability and protection were of a high standard, quality, and grade that it was not.

363.   Defendants engaged in unfair methods of competition by knowingly selling DeckOver when they had knowledge that the product is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

364.   Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and proposed class members.

365.   Defendants' failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

366.   In connection with the sale, Defendants never disclosed to Plaintiffs and Proposed Class members that the DeckOver was defective.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

367.   The facts that Defendants failed to disclose were material, and Defendants' failure to disclose such facts tended to mislead or deceive Plaintiffs and Proposed Class Members.   Defendants should have revealed the facts that were material to the transaction in light of the representations of fact made in a positive matter.  Defendants' failure to disclose the facts constitutes an unfair method of competition.

368.   Defendants failed to give Plaintiffs and Proposed Class Members adequate warnings and notices regarding the defects in the DeckOver despite the fact that Defendants knew or should have known of this defect, with the intent that Plaintiffs and the Proposed Class Members would rely upon Defendants' failure to disclose the defect when purchasing the DeckOver.  Thus, Defendants' knew of the defective nature of the DeckOver and yet continued to sell and distribute them to Plaintiffs and proposed class members and concealed its known defects from them.

369.   Defendants' failure to disclose deceives or tends to deceive consumers.

370.   Defendants further violated and continue to violate the CSPA by engaging in the following practices proscribed by Ohio Revised Code §1345.03 in consumer transactions with the Plaintiff and the Proposed Class, which were intended to result in, and did result in, the sale of the DeckOver to Plaintiff and the Proposed Class:

a.    (A) because Defendants engaged and are engaging in "an unconscionable act or practice in connection with a consumer transaction;"

b.    (B)(2) because Defendants "knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;"

c.    (B)(3) because Defendants "knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;" and

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

d.    (B)(6) because Defendants "knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment."

371.    Defendants violated the CSPA and Ohio Administrative Code by misrepresenting qualities of DeckOver though its advertisements and product labels when it knew, or should have known, that the representations and advertisements were unsubstantiated, false, unfair, deceptive and/or unconscionable and otherwise have no reasonable basis in fact.

372.    Pursuant to the CSPA, Plaintiffs and the Proposed Class are entitled to rescind the consumer transactions, recover damages or other appropriate relief under Rule 23 of the Federal Rules of Civil Procedure.

373.    Defendants had notice that in connection with the sale of the DeckOver in Ohio, it is a false, unfair, deceptive and/or unconscionable act or practice to make misrepresentations. Defendants were further placed on notice that if they did engage in such false, unfair, deceptive and/or unconscionable acts, it would be required to make full restitution and reimburse the purchase price to the Class that purchased the Windows.

374.    As a direct and proximate result of Defendants' violation of Ohio Revised Code §1345.03, Plaintiffs and proposed class members have suffered actual damages and were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

375.    Pursuant to Ohio Revised Code §1345.09(A), Plaintiffs and the proposed class members are entitled to rescind the consumer transactions or recover actual damages plus an amount not exceeding $5,000 in non-economic damages.

376.    Pursuant to Ohio Revised Code §1345.09(B), Plaintiffs and the proposed class members are entitled to rescind the transactions or recover three times the amount of the Plaintiffs' actual economic damages or two hundred dollars, whichever is greater plus an amount not to exceed $5,000 in noneconomic damages or recover damages or other appropriate relief in a class action under Ohio Civil Rule 23.

377.   Pursuant to Ohio Revised Code §1345.09(D), Plaintiffs and the Proposed Class seek an order enjoining the above-described wrongful acts and practices of the Defendant and for restitution and disgorgement.

378.   Pursuant to § 1345.09(E), this Complaint will be served upon the Ohio Attorney General, Michael DeWine.

379.   Plaintiffs and the Proposed Class reserve the right to allege further violations of Ohio's CSPA as Defendants' conduct is ongoing.

## Count XVIII

### Violation of Oregon Unlawful Trade Practices Law
### Or. Rev. Stat §§ 646.605, *et seq.* ("OUTPL")
### (Plaintiffs Philip Ross and Janice Huskey on Behalf of the Oregon Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)

380.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

381.   Defendants are engaged in a "trade" and "commerce" within the meaning of the OUTPL. OR. REV. STAT. § 646.605(8).

382.   Defendants are "persons" within the meaning of the OUTPL. OR. REV. STAT. §§ 646.605(4), 646.607, and 646.608.

383.   Plaintiffs' and each and every Class members' purchase of DeckOver constitutes a "sale" within the meaning of the OUTPL. OR. REV. STAT. § 646.607.

384.   Defendants have advertised DeckOver within the meaning of the OUTPL. OR. REV. STAT. § 646.608.

385.   The policies, acts, and practices of Defendants as described herein were intended to result in the sale of DeckOver to Plaintiffs and Class members.

386.   As alleged herein, Defendants have engaged in unconscionable tactics, false advertising, deceptive practices, unlawful methods of competition, and/or unfair acts as defined in the OUTPL, to the detriment of Plaintiffs and Oregon Class

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

members. Defendant's unconscionable tactics and deceptive practices have been intentionally, knowingly, and unlawfully perpetrated upon Plaintiffs and Oregon Class members and have violated and continue to violate the OUTPL.

387.   In violation of OR. REV. STAT. § 646.608, Defendants have engaged and continue to engage in at least the following unlawful business and trade practices in connection with the sale of DeckOver:

a.      § 646.608(1)(e): representing that goods have characteristics, uses, benefits, or qualities that they do not actually have;

b.      § 646.608(1)(g): representing that goods are of a particular standard, quality, or grade when they are of another;

c.      § 646.608(1)(i): advertising goods with intent not to provide the goods as advertised;

d.      § 646.608(1)(t): concurrent with tender or delivery of goods, fails to disclose any known material defect or material nonconformity; and

e.      § 646.608(1)(u): engages in any other unfair or deceptive conduct in trade or commerce.

388.   The standardized practice and advertisements utilized and promoted for DeckOver uniformly applied to Plaintiff and Class members, all of whom were uniformly exposed to and relied on advertising for DeckOver, including (at minimum) on DeckOver product labeling and on in-store advertising or on Home Depot's website. As a result of Defendants' deceptive and unfair advertising and trade practices, as well as Defendants' material omissions of fact concerning the quality of DeckOver, Plaintiffs and the Class purchased DeckOver that they otherwise would not have purchased, or for which they would have paid less.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

389.   As a result of Defendant's unlawful conduct, Plaintiffs and Oregon Class members have incurred economic damages including, but not limited to, out of pocket expenses, damage to property, and uncompensated labor.

390.   In addition to compensatory damages, Plaintiffs seek recovery of attorneys' fees, costs of litigation, punitive damages, and other equitable relief as determined by the court pursuant to OR. REV. STAT. § 646.638.

## Count XIX

**Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law (Plaintiff Anne Gober on Behalf of the Pennsylvania Class Against the Home Depot Defendants and, in the Alternative, against the Behr Defendants)**

391.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

392.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") protects consumers against "unfair or deceptive acts or practices" in connection with the sale or advertisement of any merchandise. 73 PS. § 201-1 *et seq.*

393.   Defendants engaged in unfair, unlawful, and deceptive acts in trade and commerce which have the capacity and tendency to deceive and did deceive Plaintiff and the Proposed Class members and damaged Plaintiff and the Proposed Class members.

394.   DeckOver was purchased by Plaintiff and proposed class members for personal, family and/or household purposes.

395.   Defendants engaged in deceptive acts and practices in the conduct of business, trade, and commerce by manufacturing, distributing, marketing, and selling DeckOver to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading within months of application.

396.   Defendants engaged in deceptive acts and practices in the conduct of business, trade, and commerce by knowingly selling DeckOver when it had knowledge that the product is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, and instead is prone to promptly peeling, chipping, bubbling, and degrading within months of application. Defendants failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and proposed class members.

397.   Defendants failure to disclose material facts concerning performance and the fact that DeckOver did not work as represented was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendants' conduct.

398.   In connection with the sale, Defendants never disclosed to Plaintiff and Proposed Class members that the DeckOver was defective.

399.   The facts that Defendants failed to disclose were material, and Defendants' failure to disclose such facts tended to mislead or deceive Plaintiff and Proposed Class Members.   Defendants should have revealed the facts that were material to the transaction in light of the representations of fact made in a positive matter.  Defendants' failure to disclose the facts constitutes an unfair deceptive act and practice.

400.   Defendants failed to give Plaintiff and Proposed Class Members adequate warnings and notices regarding the defects in the DeckOver despite the fact that Defendants knew or should have known of this defect, with the intent that Plaintiff and the Proposed Class Members would rely upon Defendants' failure to disclose the defect when purchasing the DeckOver.  Thus, Defendants' knew of the defective nature of the DeckOver and yet continued to sell and distribute them to Plaintiff and proposed class members and concealed its known defects from them.

401.   Defendants' acts and practices were unfair in that they caused or were likely to cause substantial injury to Plaintiff and proposed class members which was

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

not reasonably avoidable by Plaintiff and proposed class members and not outweighed by countervailing benefits to consumers or to competition.

402.   Plaintiff and the Proposed Class Members relied to their detriment on the misrepresentations made by Defendant as described above.

403.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the proposed class members have suffered a loss and were injured.  Plaintiff and proposed class members were injured because, among other reasons, they purchased DeckOver and did not receive the full value of their purchase.

404.   If Plaintiff and proposed class members knew about the true nature of the DeckOver, they would not have purchased it or would have paid less for it.

405.   Defendants are engaging in or about to engage in the conduct described herein and will continue to do so unless restrained.

406.   Plaintiff and proposed class members are entitled pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law to recover actual damages, equitable and injunctive relief and attorneys' fees.

## Count XX

### Breach of Implied Warranty

### (All Plaintiffs on Behalf of the Implied Warranty Class Against All Defendants)

407.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

408.   Defendants are in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and selling DeckOver.  Defendants impliedly warranted to Plaintiffs and class members that DeckOver was of a certain quality, was fit for the ordinary purpose for which DeckOver would be used, and conformed to the promises or affirmations of fact made on the container or label.

409.   Defendants are in privity with each of the Plaintiffs and class members by law and fact.  First, Plaintiffs have had sufficient direct dealings with Defendants

and/or their representatives and agents to establish privity of contract.  Second, Plaintiffs and class members are intended third-party beneficiaries of contracts, including between the Behr Defendants and the Home Depot Defendants.  Third, Defendants' advertisements were aimed at Plaintiffs and class members.  Defendants are estopped from limiting claims by class members for common law and statutory violations based on a defense of lack of privity.

410.   DeckOver would not pass without objection in the market for resurfacers because it is prone to premature peeling, cracking, and bubbling, which also makes it unfit for the ordinary purpose for which DeckOver would be used.

411.   DeckOver is not adequately labeled because its labeling fails to disclose its propensity to premature peeling, cracking, bubbling, and degradation, and does not advise members of the proposed class of the existence of the issue prior to experiencing failure firsthand.

412.   Defendants' conduct described in this complaint constitutes a breach of implied warranty under U.C.C. § 2-314.  At all times, the 49 states included in the Implied Warranty Class and the District of Columbia have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability.

413.   Defendants' actions have deprived Plaintiffs and the members of the proposed class of the benefit of their bargains and have caused DeckOver to be worth less than what Plaintiffs and other members of the proposed class paid.

414.   As a direct and proximate result of Defendants' breach of implied warranty, members of the proposed class received goods whose condition substantially impairs their value.  Plaintiffs and members of the proposed class have been damaged by the diminished value of their DeckOver.

415.   Plaintiffs and members of the proposed class are entitled to damages, as well as reasonable attorneys' fees and costs.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

## Count XXI

## Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty, Cal. Civ. Code § 1790, *et seq.*

### (Plaintiff McCall on Behalf of the California Class Against All Defendants)

416.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

417.   DeckOver products are "consumer goods" and Plaintiff McCall and proposed class members are "buyers" within the meaning of Cal. Civ. Code § 1791. Each Defendant is also a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

418.   The implied warranty of merchantability included with the sale of DeckOver means that Defendants warranted that its product (a) was fit for the ordinary purposes for which DeckOver would be used, and (b) conformed to the promises or affirmations of fact made on the container or label.

419.   DeckOver would not pass without objection in the market for resurfacers because it is prone to premature peeling, cracking, bubbling, and degradation, which also makes it unfit for the ordinary purpose for which DeckOver would be used.

420.   DeckOver is not adequately labeled because its labeling fails to disclose its propensity to premature peeling, cracking, bubbling, and degradation, and does not advise members of the proposed class of the existence of the issue prior to experiencing it firsthand.

421.   Defendants' actions have deprived Plaintiff and the members of the proposed class of the benefit of their bargains and have caused DeckOver to be worth less than what Plaintiff and other members of the proposed class paid.

422.   As a direct and proximate result of Defendants' breach of implied warranty, members of the proposed class received goods whose condition substantially impairs their value.  Plaintiff and members of the proposed class have been damaged by the diminished value of their DeckOver.

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

423.   Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and members of the proposed class are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of DeckOver or the overpayment or diminution in the value of their DeckOver.  They are also entitled to all incidental and consequential damages resulting from Defendants' breach, as well as reasonable attorneys' fees and costs.

## Count XXII

**Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301,** *et seq.*
**(Plaintiffs Richey, Tobey, Noftzger, Amborn, McCall, Whitehead, Elger, and Ross on Behalf of the New York, New Jersey, Missouri, Minnesota, California, Massachusetts, Michigan, and Oregon Classes, Respectively, Against All Defendants)**

424.   Plaintiffs re-allege the paragraphs above as if fully set forth herein

425.   Plaintiffs and the other members of the classes are "consumers" within the meaning of 15 U.S.C. § 2301(3).

426.   Defendants are "suppliers" and "warrantors" within the meanings of 15 U.S.C. § 2301(4)-(5).

427.   DeckOver products are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

428.   There exists an implied warranty for sale of DeckOver within the meaning of the Act.

429.   For the reasons detailed above, Defendants breached this implied warranty, as DeckOver was not fit for its intended use.

430.   Defendants' breach of warranty has deprived Plaintiffs and class members of the benefit of their bargain.

431.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

432.    Defendants have been afforded reasonable opportunity to cure its breach of warranty.  Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiffs on behalf of themselves and class members have sent notice to Defendants' principal places of business to provide them with reasonable opportunity to correct their business practices and cure their breach of warranties under the Act.  Defendants have not cured the breach of warranty.

433.    In addition, resorting to any informal dispute settlement procedure or affording Defendants another opportunity to cure its breach of warranty is unnecessary and futile.  Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Defendants continue not to disclose DeckOver's propensity to rapidly peel, crack, bubble, and degrade, or to provide repairs at no cost.  Any requirement under the Act or otherwise that Plaintiffs resort to any informal dispute settlement procedure or afford Defendants a reasonable opportunity to cure the breach of warranty described above is excused or, alternatively, has been satisfied.

434.    As a direct and proximate cause of Defendants' warranty breach, Plaintiffs and all class members sustained damages and other losses in an amount to be determined at trial.  Defendants' conduct damaged Plaintiffs and the other members of the class, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter a judgment awarding the following relief:

a.      An order certifying the proposed classes and appointing Plaintiffs' counsel to represent the classes;

---

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

b.  An order awarding Plaintiffs and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act by Plaintiffs Clow, Corneail, Darby, Droge, Durda, Gober, Hultmark, Huskey, Kastanis, Lagesen, Lange, Meyers, Diane or Ronald Stricklin, Weygant, Wood, Wormwood, or Zablotny;

c.  An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act by Plaintiffs Plaintiffs Clow, Corneail, Darby, Droge, Durda, Gober, Hultmark, Huskey, Kastanis, Lagesen, Lange, Meyers, Diane or Ronald Stricklin, Weygant, Wood, Wormwood, or Zablotny;

d.  An order enjoining Defendants from their unlawful conduct;

e.  An order awarding the pre-judgment and post-judgment interest as allowed under the law;

f.  An order awarding Plaintiffs and the classes reasonable attorneys' fees and costs of suit, including expert witness fees; and

g.  An order awarding such other and further relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

1
**JURY DEMAND**

2
Plaintiffs hereby demand a trial by jury on all issues so properly triable thereby.

3

4
Dated:  October 27, 2017                     Respectfully submitted,

5
                                        **GIBBS LAW GROUP LLP**

6

7
                                        By: */s/ Eric H. Gibbs*

8

9
                                        Eric H. Gibbs

10
                                        David Stein
                                        Amanda Karl

11
                                        505 14th Street, Suite 1110

12
                                        Oakland, CA 94612
                                        Tel: (510) 350-9700

13
                                        Fax: (510) 350-9701

14
                                        ehg@classlawgroup.com
                                        ds@classlawgroup.com

15
                                        amk@classlawgroup.com

16

17
                                        *Attorneys for Plaintiffs Amborn, McCall,*
                                        *Noftzger, Richey, Tobey, and Whitehead*

18

19

20

21

22

23

24

25

26

27

28

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

Dated:  October 27, 2017

**CHIMICLES & TIKELLIS LLP**

By: */s/ Steven A. Schwartz*

Steven A. Schwartz
Benjamin F. Johns
Andrew W. Ferich
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
SAS@chimicles.com
BFJ@chimicles.com
AWF@chimicles.com

**MLG AUTOMOTIVE LAW, APLC**
Jonathan Michaels
Kathryn Harvey
2801 W. Coast Highway Suite 370
Newport Beach, CA 92663
Telephone: (949) 581-6900
Facsimile: (949) 581-6908
jmichaels@mlgautomotivelaw.com
kharvey@mlgautomotivelaw.com

*Attorneys for Plaintiffs Elger and Ross*

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

Dated:  October 27, 2017               **KOHN, SWIFT & GRAF, P.C.**


                                       By: */s/ Johnathan Shub*

                                       Jonathan Shub
                                       Kevin Laukaitis*
                                       One South Broad Street
                                       Suite 2100
                                       Philadelphia, Pennsylvania 19107
                                       Ph: (215) 238-1700
                                       jshub@kohnswift.com
                                       klaukaitis@kohnswift.com

                                       **LITE DEPALMA GREENBERG LLC**
                                       Katrina Carroll*
                                       Ismael T. Salam*
                                       211 W. Wacker Drive, Suite 500
                                       Chicago, Illinois 60606
                                       Ph: (312) 750-1265
                                       kcarroll@litedepalma.com
                                       isalam@litedepalma.com

                                       *Pro Hac Vice Application forthcoming*

                                       *Attorneys for Plaintiffs Gober, Wormwood,*
                                       *Corneail, Weygant, Durda, Darby, and*
                                       *Zablotny*

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

Dated:  October 27, 2017

**BARRACK, RODOS & BACINE**

By: */s/ Stephen R. Basser*

Stephen R. Basser
Samuel M. Ward
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874
sbasser@barrack.com
sward@barrack.com

**THE OZZELLO PRACTICE PC**
Mark A. Ozzello
17383 W Sunset Blvd, Ste A380
Pacific Palisades, CA 90272
Telephone:  (844) 774-2020
Facsimile:   (310) 454-5970
mark@ozzellolaw.com

**EMERSON SCOTT, LLP**
John G. Emerson **
830 Apollo Lane
Houston, TX  77058
Telephone:  (281) 488-8854
Facsimile:  (281) 488-8867
jemerson@emersonfirm.com

**JOHNSON FIRM**
Christopher D. Jennings**
2226 Cottondale Ln., Suite #210
Little Rock, AR 72202
Telephone: (501) 777-7777
Facsimile: (888) 505-0909
chris@yourattorney.com

  **Admitted pro hac vice*

92

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

*Attorneys for Plaintiffs Kastanis, Lange, Wood, Diane and Ronald Stricklin, Droge, Langesen, Clow, Huskey, and Hultmark*

Dated: October 27, 2017                **ROBINS KAPLAN LLP**

By: */s/ Michael F. Ram*

Michael F. Ram
Susan S. Brown
2440 West El Camino Real
Mountain View CA 94040
Tel: (650) 784-4040
Fax: (650) 784-4041
mram@robinskaplan.com
sbrown@robinskaplan.com

**ROCK LAW LLP**
Jeffrey B. Cereghino
Matt J. Malone
101 Montgomery Street, Suite 1800
San Francisco, California 94111
Tel: (415) 433-4949
jbc@rocklawcal.com
mjm@rocklawcal.com

*Attorneys for Plaintiff Meyers*

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>ATTESTATION STATEMENT</u>

Pursuant to Local Rule 5-4.3.4(a)(2), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: October 27, 2017          Respectfully submitted,

By:   */s/ Eric H. Gibbs*

CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:17-cv-1016-AG-KES